[Sac. No. 7613.   In Bank.   Mar. 31, 1966.]

HOWARD W. ENTZ, et al., Plaintiffs, Cross-defendants and Respondents, v. FIDELITY & CASUALTY COMPANY OF NEW YORK, Defendant, Cross-complainant and Appellant; UNITED PACIFIC INSURANCE COMPANY, Cross-defendant and Respondent.

Fitzwilliam, Memering, Stumbos & DeMers and T. D. Bolling, Jr., for Defendant, Cross-complainant and Appellant.

Johnson, Davies & Greve and Claire H. Greve for Plaintiffs, Cross-defendants and Respondents, and for Cross-defendant and Respondent.

McCOMB, J.—Defendant appeals from a judgment in a declaratory relief action extending coverage of an insurance policy to additional insured under a "loading and unloading" clause in the policy.

*Facts*: Mr. Pruitt, a cement worker, was injured when struck by an angle iron falling from atop an iron fence that was being erected by plaintiffs, doing business as Capitol Iron Works (hereinafter referred to as "Capitol").

Capitol supplied the fence, dug post holes, set the iron posts therein, and aligned the fence, using the angle iron to maintain the fence in a straight position until the post holes were filled with cement.

Capitol had contracted with Mr. Martin, Pruitt's employer, to pour cement for five post holes and had agreed to pay him a certain amount per hole.

Mr. Martin had made arrangements with A. Teichert & Son to bring cement in a transit mix truck, owned by Teichert, to the job site and pour cement for the holes. The truck was operated by an employee of Teichert.

The truck driver testified that at the time of the accident he had dumped enough cement for two post holes on the ground about a foot or two from the fence, and Mr. Pruitt was shoveling the cement into the post holes with a shovel.

Teichert's operations, including use of the truck, were insured by defendant. The contract of insurance provides under coverage A: "To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury . . . sustained by any person and caused by accident."

"Insured" is defined as including "under coverages A and B, any person while using an owned automobile . . . and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is . . . with [the named insured's] permission . . . ."

The term "use" in the contract of insurance is defined therein to include "loading and unloading."

Capitol was insured comprehensively by United Pacific Insurance Company, but its policy did not extend coverage to nonowned automobiles. The cement truck here involved was such an automobile.

Pruitt filed an action against Capitol for damages for personal injuries. Thereafter, plaintiffs filed a declaratory relief action seeking a declaration that defendant was required to defend the action brought by Pruitt and to pay any judgment rendered therein against them.

Defendant filed a cross-complaint, naming as cross-defendants plaintiffs and United Pacific Insurance Company. In the cross-complaint, defendant sought a declaration that Capitol was not entitled to coverage under its policy; that United was obligated under its comprehensive liability policy issued to Capitol to defend the action brought by Pruitt and to pay any judgment rendered therein; and that if it was determined that Capitol had coverage under defendant's policy, the court further declare that any judgment against Capitol in the action brought by Pruitt be shared by defendant and United according to their respective policy limits.

In their answer, plaintiffs and United asserted that defend-

ant had primary liability and that the insurance of United was excess only over and above defendant's policy.

The trial court found that defendant's policy was primary insurance, that defendant was required to defend the Pruitt action and pay all damages and costs therein up to its limit of coverage, and that United was required to pay under its policy only after defendant's policy limit was first exhausted.

Question: *In construing a policy of vehicle insurance providing coverage for the use of a vehicle and declaring that such "use" shall include the "loading and unloading" thereof, does the "complete operation" rule or the more restrictive "coming to rest" rule apply?*

The "coming to rest" rule is now clearly the minority view and is being superseded by the "complete operations" rule. (See Magarick, *Loading and Unloading Under the Standard Automobile Policy,* 67 Dick.L.Rev. 257, 258-259; Risjord, *Loading and Unloading,* 13 Vand.L.Rev. 903, 904; 95 A.L.R. 2d 1122, 1129.)

The following statement from *American Auto. Ins. Co.* v. *American Fid. & Cas. Co.,* 106 Cal.App.2d 630, 634 [235 P.2d 645], points up the difference between the two doctrines: "Generally speaking, in determining whether the accident occurred during the unloading of a motor vehicle within the meaning of a 'loading or unloading' provision in a liability policy, the courts have adopted one of two theories, the 'coming to rest' or the 'complete operation' doctrine.

"Of the two, the 'coming to rest' doctrine gives the more limited construction to the 'loading and unloading' provision. Under this doctrine, 'unloading' includes only the actual removing or lifting of the article from the motor vehicle up to the moment when it has actually come to rest and has started on its course to be delivered by other powers and forces independent of the motor vehicle, and the motor vehicle itself is no longer connected with the process of unloading. The motor vehicle is then said to be no longer in use.

"Under the 'complete operation' doctrine, which is the broader of the two, 'unloading' is regarded as embracing all the operations which are required in any specific situation to effect a completed delivery of the article. For practical purposes, this doctrine makes no distinction between 'unloading' and 'delivery.' ' "

It should be noted that under the "complete operations" rule the number of temporary or intermediate stops or resting places is immaterial.

■ Where a policy provides for coverage during the loading or unloading of a vehicle, the terms "loading" and "unloading" must be given their plain and ordinary meaning. (See *United States Fid. & Guar. Co.* v. *Church,* 107 F.Supp. 683, 687 [6].)

■ Accordingly, where an accident occurs while materials being removed from a vehicle are in continuous movement and have not yet come to a rest, coverage is applicable irrespective of which theory has been adopted, the "coming to rest" rule or the "complete operations" rule, provided, as hereinafter set forth, there is some causal relationship between the accident and the use of the vehicle.

■ Under such circumstances, the person conducting the unloading operations is covered by the policy whether he is the driver of the vehicle, the consignee, or a third person. (See *Colby* v. *Liberty Mutual Ins. Co.* 220 Cal.App.2d 38, 43 [1b] [33 Cal.Rptr. 538]; *Industrial Indem. Co.* v. *General Ins. Co.,* 210 Cal.App.2d 352, 356 [5] [26 Cal.Rptr. 568]; *American Auto. Ins. Co.* v. *Transport Indem. Co.,* 200 Cal. App.2d 543, 548 [1a] [19 Cal.Rptr. 558]; *Pleasant Valley etc. Assn.* v. *Cal-Farm Ins. Co.,* 142 Cal.App.2d 126, 131 [298 P.2d 109]; *American Auto. Ins. Co.* v. *American Fid. & Cas. Co., supra,* 106 Cal.App.2d 630, 637-638.)

Although some courts following the "complete operations" rule have held that "unloading" is not complete until the material has been delivered to the place where it is to be used by the consignee (*St. Paul Mercury Ins. Co.* v. *Huitt* (6th Cir. 1964) 336 F.2d 37, 42 [7]; *Lamberti* v. *Anaco Equipment Corp.,* 16 App.Div.2d 121 [226 N.Y.S.2d 70, 72-73]), it would appear more reasonable to hold that "unloading" has been completed when, following removal of the material from the vehicle, the deliveror has finished his handling of it, and it has been placed in the hands of the receiver at the designated reception point, even though it is necessary for the consignee, or someone on his behalf, to transport it thereafter to another point. (*San Fernando Valley Crane Service, Inc.* v. *Travelers Ins. Co.,* 229 Cal.App.2d 229, 236-237 [6] [40 Cal.Rptr. 165] [hearing denied by the Supreme Court]; *Travelers Ins. Co.* v. *Employers Casualty Co.* (Tex.Civ.App.) 370 S.W.2d 105, 108 [5].)

In *American Auto. Ins. Co.* v. *American Fid. & Cas. Co., supra,* 106 Cal.App.2d 630, in which the court determined that "unloading," as used in the policy there under consideration, included all acts necessary to make a commercial delivery of

the materials transported, it was said at page 636 [3] : "As a matter of common knowledge, 'commercial delivery' includes 'taking the articles from their usual place of storage or assembly to the place of destination and turning them over to the control or possession of the purchaser or receiver. Sometimes delivery may be made by depositing things on the sidewalk or on a platform or other convenient place. That, however, is usually indicated by the custom of the business or agreement of the parties. Normally a delivery is not completed until the deliveror has finished his handling of the article, has completed his assignment or task of putting the articles into the possession of the receiving party.' (*Pacific Automobile Ins. Co.* v. *Commercial Cas. Ins. Co., supra,* 108 Utah 500 [161 P.2d 423, 428, 160 A.L.R. 1251].)"

The accident in the present case took place after the cement had come to a rest. Therefore, if the "coming to rest" doctrine were applied, there would be no coverage. ▪▪▪ California, however, is committed to the "complete operations" rule. Accordingly, we must determine whether the cement had been placed in the hands of the receiver at the designated reception point, in which event the unloading operation with respect to the portion of the cement so delivered would have been completed, or whether the delivery operation was not to be completed until the cement had actually been placed in the post holes.

The *San Fernando Valley Crane Service* case likewise involved the delivery of cement. There cement was emptied by a "mixer truck" by means of a self-unloading device into a receptacle furnished by, or on behalf of, the purchaser and thereafter conveyed by a crane to an elevated location at a building site, where the concrete was to be used. After delivery of the concrete into the bucket receptacle, the deliveror exercised no control over the cement, the bucket receptacle, or the crane.

In holding that the unloading operation had been completed and that there was therefore no coverage under the truck policy for an accident which occurred while the cement was being transported by the crane, the court said: "In determining the scope of the coverage afforded, consideration must be given to the intention of the parties to the contract of insurance. It is not reasonable to conclude that such parties intended an extension of coverage to an accident occurring after concrete has been placed in a receptacle furnished by or on behalf of the purchaser and while it is being mechanically conveyed to a location some distance above the ground. . . .

". . . the more cogent reasoning leads to the conclusion that when Consolidated [the truck owner], as it had contracted to do, brought the concrete to the job site and deposited it in the receptacle provided by or on behalf of the purchaser, the truck was then unloaded insofar as the concrete so deposited was concerned. At that time that concrete had been placed in the hands of the receiver at the designated reception point." (Pp. 236-237 [3, 4, 6].)

In the present case, after the cement was dumped from the truck, the driver, like the driver in the *San Fernando Valley Crane Service* case, exercised no control over the cement or the shoveling operation. He testified that he operated the lever on the truck to discharge cement when the person for whom he was pouring told him to do so, in this case Mr. Pruitt, and that the person for whom he was pouring had a right to move the chute wherever he desired.[1]

He also said that the cement in his truck on the day of the accident was for sidewalks, patios, pads for air conditioners, and steps at the building site, as well as the five post holes, and that the cement he delivered at Mr. Pruitt's direction just before the accident occurred was deposited at a place from which it could have been used for either sidewalks or the post holes.

Under the circumstances, it would seem that when Teichert brought the concrete to the job site and deposited it on the ground where directed by Mr. Pruitt, Mr. Pruitt determining where and how to transport it further, "the truck was then unloaded insofar as the concrete so deposited was concerned. At that time that concrete had been placed in the hands of the receiver at the designated reception point." (*San Fernando Valley Crane Service, Inc.* v. *Travelers Ins. Co., supra,* 229 Cal.App.2d at p. 237.)

It is contended that since some of the cement to be poured for the post holes was still in the truck, the accident occurred during the unloading of the truck, and defendant's policy therefore provides coverage. The question, however, is not whether the accident occurred during the unloading, but, rather, whether the injury arose out of the use of the vehicle.

Although the vehicle need not be, in the legal sense, a proximate cause of the injury, the events giving rise to the claim must arise out of, and be related to, its use. (*American Auto.*

---

[1] He added, however, that when filled with cement, the chute was heavy and therefore hard to move.

*Ins. Co.* v. *Transport Indem. Co., supra,* 200 Cal.App.2d 543, 549-550 [2]; *Columbia Southern Chemical Corp.* v. *Manufacturers & Wholesalers Indem. Exchange,* 190 Cal.App.2d 194, 202 [4] [11 Cal.Rptr. 762].)

There is evidence from which the trial court could have found that the shoveling of cement into the post holes jarred the fence, causing the iron to fall. Such a finding would show a causal relationship between the accident and the cement which had already been removed from the truck. However, as pointed out above, the unloading operation had been completed with respect to that portion of the cement before the accident occurred; and no basis has been suggested for finding a causal relationship between the accident and the cement still in the truck. Accordingly, it cannot be said that the injury arose out of the use of the vehicle.

The situation here differs from that in *Maryland Casualty Co.* v. *Tighe* (9th Cir. 1940) 115 F.2d 297. In that case a truck driver, who had delivered some vegetables to an inn, ran into a pedestrian while hurriedly returning to the truck for more vegetables to deliver. Under such circumstances, there clearly was a causal relationship between the driver's action and the vegetables which were still in the truck, the unloading being a continuing operation. As a result, it was held that the accident arose out of the unloading, and therefore the use, of the truck.

It will be noted, incidentally, that in the *San Fernando Valley Crane Service* case less than a third of the cement in the truck had been removed at the time of the accident. As in the present case, however, the operation was not a continuing one, and there was no causal relationship between the accident and the cement still in the truck. Accordingly, it could not be said that the injury arose out of the use of the truck.

In *Columbia Southern Chemical Corp.* v. *Manufacturers & Wholesalers Indem. Exchange, supra,* 190 Cal.App.2d 194, cited by plaintiffs, a rope attached to a spout used to load truck hatches with soda ash broke just as the *loading* of the truck was being completed, causing injury to the truck driver. The court did not discuss the ''coming to rest'' and ''complete operations'' rules, but simply held, ''We are convinced that in construing the term 'using' as expanded by the specific provisions of the policy to include 'loading and unloading,' the respondent was 'using' the truck.'' (P. 203 [6].)

It would appear that removal of the spout after the truck

hatches had been filled was actually part of the loading process involved in the *Columbia Southern Chemical* case. But even if we assume, as plaintiffs here argue, that loading had been completed before the spout was removed, the accident still occurred while the truck was being "used," and there was a causal relationship between the injury and the use of the truck. The effect of a "loading and unloading" provision is simply to expand the term "use of the vehicle" so that coverage will extend from the commencement of loading until the completion of unloading.

The judgment is reversed.

Traynor, C. J., Peters, J., Tobriner, J., Peek, J., Mosk, J., and Burke, J., concurred.