[Civ. No. 11796.   Third Dist.   Mar. 17, 1969.]

PACIFIC INDEMNITY COMPANY, Plaintiff and Respondent, v. TRUCK INSURANCE EXCHANGE, Defendant and Appellant.

A. John Merlo for Defendant and Appellant.

Rich, Fuidge, Dawson, Marsh & Morris and Charles C. Dawson, Jr., for Plaintiff and Respondent.

FRIEDMAN, J.—This action is one of the recurring contests in which one insurance carrier seeks to shift all or part of a loss to another. The trial court entered a declaratory judgment prorating the loss, two-thirds to be borne by plaintiff Pacific Indemnity Company, one-third by defendant The Truck Insurance Exchange. The latter appeals. (In this

opinion The Truck Insurance Exchange will be referred to as "Exchange.")

Carl Stapleton was a truck broker and garage owner. At the request of contractors he would supply owner-drivers of dump trucks, receiving a commission on the truck rentals. As a service to the owner-drivers, he would permit them to use his shop and equipment to repair their trucks. Pacific Indemnity Company had issued Stapleton a comprehensive general liability policy with a single-person loss limit of $50,000.

L. J. Mathis owned a dump truck and had taken out a truck liability policy issued by Exchange, with a single-person loss limit of $25,000. Wishing to repair his truck in Stapleton's shop, Mathis received the latter's permission and was directed to a repair stall. In order to lift the front end of his truck, he used a chain hoist which was part of Stapleton's shop equipment. He was beneath his raised truck completing the repairs when a link on the chain hoist broke. The truck dropped, injuring Mathis. Mathis alone conducted the truck lifting and repair process without physical participation by Stapleton or the latter's employees.

Mathis brought a personal injury action against Stapleton. Pacific Indemnity called upon Exchange to join in the defense on the theory that Stapleton, the garage owner, was a "user" of the truck and thus an additional insured under the liability policy issued by Exchange. The latter rejected the invitation. Eventually Pacific Indemnity settled Stapleton's claim and prosecuted this action to recover a prorated share of the loss, contending that Stapleton had been using the truck with permission of Mathis, hence came within the extended coverage of the latter's policy.

■ Vehicle Code section 16451 provides that an owner's motor vehicle liability insurance shall insure not only the policyholder but "any other person . . . using [the] motor vehicle with the express or implied permission of said assured, against loss from the liability imposed by law for damages arising out of ownership, maintenance, or use of such motor vehicle. . . ." Although the policy it issued to Mathis did not contain a comparable clause, Exchange concedes that the statutory extension of coverage to permissive users is an implicit part of the policy. (See *Wildman* v. *Government Emp. Ins. Co.,* 48 Cal.2d 31, 39-40 [307 P.2d 359].) Its appeal involves an issue of law, a question of interpreting a statutory insuring clause as applied to undisputed facts. (*St. Paul Fire & Marine Ins. Co.* v. *Hartford Acc. & Indem. Co.,* 244 Cal. App.2d 826, 830-831 [53 Cal.Rptr. 650].)

The statutory omnibus clause establishes two conditions of extended coverage: one, the vehicle's *use* with the owner's permission, and two, liability for damages *arising out of* the vehicle's ownership, maintenance or use. Most traffic accidents involve operation or ''use'' of the vehicle, hence fit the verbal forms of extended coverage with nicety. Nontraffic accidents in which the vehicle is a peripheral factor aften have factual contours ill-shaped to these verbal forms. The insurance carriers seek to shift or share their losses, settling the easy cases or leaving them unappealed, presenting the more bizarre accidents to the appellate courts. The latter must then decide whether the unusual facts fit the generalized formulae of extended coverage which, relative to those facts, are now metamorphosed into ambiguity.

In deciding whether peripheral activity involving a vehicle amounts to a ''use,'' the courts follow the rule that uncertainties in policy language are construed in favor of imposing liability on the insurer; hence, that ''use'' must be understood in its most comprehensive sense.[1] The term is not confined to motion on the highway, but extends to any activity in utilizing the insured vehicle in the manner intended or contemplated by the insured.[2]

American decisions considering repair and maintenance as a ''use'' reach disparate results dictated by variations in the facts or policy provisions. These decisions justify the generalization that vehicle repair or maintenance by an independent garage or service station operator is not itself a use of the vehicle; nevertheless, that a use occurs if a servicing employee drives the vehicle as an incident of the maintenance work.[3] Here we confront a novel factual twist. The repair job was not being performed by the negligent garage owner, but

---

[1] *Universal Underwriters Ins. Co.* v. *Aetna Ins. Co.*, 249 Cal.App.2d 144, 150 [57 Cal.Rptr. 240]; *St. Paul Fire & Marine Ins. Co.* v. *Hartford Acc. & Indem. Co., supra*, 244 Cal.App.2d at p. 831. The briefs cite decisions applying use clauses as extended by the loading and unloading clauses of truck liability policies, e.g., *Entz* v. *Fidelity & Cas. Co.*, 64 Cal.2d 379 [50 Cal.Rptr. 190, 412 P.2d 382]. The loading and unloading decisions are not in point.

[2] 12 Couch on Insurance (2d ed.) section 45:325, p. 337, cited in *St. Paul Fire & Marine Ins. Co.* v. *Hartford Acc. & Indem. Co., supra*, 244 Cal.App.2d at p. 831.

[3] *Yandle* v. *Hardware Mut. Ins. Co.*, 314 F.2d 435; *Commercial Standard Ins. Co.* v. *Bacon*, 154 F.2d 360; *Case* v. *Fidelity & Cas. Co. of New York*, 105 N.H. 422 [201 A.2d 897]; *Madden* v. *Farm Bureau Mut. Auto. Ins. Co.*, 82 Ohio App. 111 [79 N.E.2d 586]; *Gullickson* v. *Western Cas. & Surety Co.*, 17 Wis.2d 220 [116 N.W.2d 121]; cf. *Exchange Cas. & Surety Co.* v. *Scott*, 56 Cal.2d 613 [15 Cal.Rptr. 897, 364 P.2d 833].

by the nonnegligent policyholder, whose public liability policy is now called upon to finance his own damage claim.

██ The characteristics of the present accident are such that more guidance emanates from the second statutory clause, i.e., "damages arising out of ownership, maintenance, or use" of the insured vehicle. The clause imports some kind of sequential relationship between the vehicle and the accident. The decisions posit varying descriptions of this relationship. One is that the vehicle need not be the proximate cause of the injury in the legal sense, but "the events giving rise to the claim must arise out of, and be related to, its use."[4] Another is that the injury be a "natural and reasonable incident or consequence of the use of the [automobile] for the purposes shown by the declarations . . . [and not] directly caused by some independent act, or intervening cause wholly disassociated from, independent of and remote from the use of the [automobile]."[5] The phrase "arising out of" is equated with origination, growth or flow from the event.[6]

██ Recognizing that vehicle liability policies stop somewhere short of all-risk coverage, these descriptions seek to define a point at which the vehicle passes from an incidental to a focal role in the accident. At the risk of bringing coals to Newcastle, still another test may be hazarded. The notion of law-imposed damages arising out of an activity strongly connotes an actionable wrong committed in the conduct of the activity. In the present case, of course, negligence was the actionable wrong. The actionable negligence lay in the maintenance of the chain hoist which was part of Stapleton's shop equipment, not in his maintenance or use of the insured truck.[7] In the words of the Missouri decision quoted in *Webb*

---

[4]*Entz* v. *Fidelity & Cas. Co.*, *supra*, 64 Cal.2d at p. 385; see also, *American Auto. Ins. Co.* v. *Transport Indem. Co.*, 200 Cal.App.2d 543, 550 [19 Cal.Rptr. 558]; *City of Santa Monica* v. *Royal Indem. Co.*, 157 Cal. App.2d 50, 55 [320 P.2d 136].

[5]*Truck Ins. Exchange* v. *Webb*, 256 Cal.App.2d 140, 145-146 [63 Cal. Rptr. 791], quoting from *Schmidt* v. *Utilities Ins. Co.*, 353 Mo. 213 [182 S.W.2d 181, 184, 154 A.L.R. 1088].

[6]*Red Ball Motor Freight* v. *Employers Mut. Liab. Ins. Co.*, 189 F.2d 374, 378; *National Union Fire Ins. Co.* v. *Bruecks*, 179 Neb. 642 [139 N.W.2d 821, 826-827]; *Carter* v. *Bergeron*, 102 N.H. 464 [160 A.2d 348, 353, 89 A.L.R.2d 142]; *Schmidt* v. *Utilities Ins. Co.*, *supra*, 182 S.W.2d at p. 184; see 12 Couch, *op. cit.*, § 45:61, p. 150; Annot. 89 A.L.R.2d 150.

[7]Compare *Exchange Cas. & Surety Co.* v. *Scott*, *supra*, 56 Cal.2d 613. In that case the owner had left his car at a moving-line car wash. When the car left the wash line, an employee of the car wash negligently drove it toward another location on the premises, injuring a fellow employee. The court held the negligent driver to be an additional insured under the car owner's policy, since the liability was one "arising from [the]

(fn. 5, *supra*), the injury was directly caused by an "independent act, or intervening cause wholly disassociated from, independent of and remote from the use of the [automobile]."

The judgment is reversed. The trial court is directed to enter a declaratory judgment consistent with this opinion.

Pierce, P. J., and Janes, J., concurred.

maintenance" of the car. In that case the actionable wrong was committed in the actual maintenance or use of the vehicle. Here, in contrast, the actionable wrong lay in the maintenance of the shop equipment.