[Civ. No. 46526. Second Dist., Div. Four. Feb. 22, 1977.]

GALLOWAY CRANE AND TRUCKING COMPANY,
Cross-complainant and Appellant, v.
TRUCK INSURANCE EXCHANGE et al.,
Cross-defendants and Respondents.

## COUNSEL

Levy, Koszdin, Goldschmid & . Sroloff, Levy, Koszdin & Woods, Matthew B. F. Biren and Thomas Glen Wianecki for Cross-complainant and Appellant.

Early, Maslach, Boyd & Leavey, Frank P. Campbell, Morgan, Wenzel & McNicholas and John P. McNicholas for Cross-defendants and Respondents.

## OPINION

**KINGSLEY, Acting P. J.**—This is an appeal from a judgment holding that the cross-defendant insurance companies were not liable to the cross-complainant for damages resulting from an injury occurring during the construction of a building. In the view we take of the case it is not necessary to outline in detail the interrelationships of the parties and their carriers, since we hold that the trial court correctly interpreted the applicable provisions of the insurance policies herein involved as applied to the facts of this case.

Briefly summarized, the pertinent facts are as follows: The injured person was an employee of the general contractor, James I. Barnes Construction Company (Barnes). He was injured when a cable, forming

part of a crane being used to lift concrete to forms located at the penthouse site of the seven-story building, broke, causing part of the crane to fall upon him. Barnes had sub-let to Blue Diamond Concrete Materials (Blue Diamond) the furnishing of concrete for the job. Blue Diamond had hired Harlan Burden to deliver the concrete. Barnes had contracted with cross-complainant, Galloway Crane & Trucking Company (Galloway), to provide a crane to lift the cement furnished by Blue Diamond and delivered by Burden up to the penthouse level, where it was to be poured into forms constructed for that purpose. When Burden's driver arrived at the construction site, he parked his truck at a point directed by Galloway's employee. The cement was then transferred, by use of a shute on the truck, into buckets provided by Galloway; the buckets were lifted by the crane to the penthouse level and were then returned, empty, for a repeat of the process. The accident occurred while one bucket was being lifted by the crane.

It is not contested that the insurance policies herein involved provided coverage during the "unloading" of the Burden truck, and that, if the policies apply to this accident, Galloway is an insured under the policies. ■ The issue before us is whether the lifting of the cement, after discharge from the truck into the buckets provided by Galloway, was part of the "unloading" process.

There are two California decisions involving somewhat similar facts. The insurance companies contend that those cases establish, for California, an interpretation of the term "unloading" which absolves them from liability. Galloway contends: (1) that those cases are distinguishable on their facts; and (2) that, in any event, the rule established by cases in other jurisdictions[1] should be followed on the facts here. We agree with the position of the insurance carriers.

Of the two cases relied on by the carriers, one—*San Fernando Valley Crane Service, Inc.* v. *Travelers Ins. Co.* (1964) 229 Cal.App.2d 229 [40 Cal.Rptr. 165]—is a decision by another division of this district and was cited with approval by the Supreme Court in *Entz* v. *Fidelity & Casualty Co.* (1966) 64 Cal.2d 379, 384-385 [50 Cal.Rptr. 190, 412 P.2d 382].

---

[1]Those cases are: *Lamberti* v. *Anaco Equipment Corp.* (1962) 16 App.Div.2d 121 [226 N.Y.S.2d 70], *Travelers Insurance Co.* v. *W. F. Saunders & Sons, Inc.* (1963) 18 App.Div.2d 126 [238 N.Y.S.2d 495], *Travelers Insurance Co.* v. *Employers Casualty Co.* (Tex. 1964) 380 S.W.2d 610. The *Lamberti* case was referred to, and rejected, by the California court in *San Fernando Valley Crane Service Inc.* v. *Travelers Ins. Co.* (1964) 229 Cal.App.2d 229, 236-237 [40 Cal.Rptr. 165]. We are bound by the California cases hereinafter discussed.

Unless it can be distinguished on its facts, it is seemingly binding upon us. In the *San Fernando* case, the court, after determining that, for California, the so-called "complete operations" rule had been adopted, in contrast to the so-called "coming to rest" rule, held that, in that case, the unloading process had been complete when cement was transferred from a delivery truck into buckets to be lifted by a crane to forms higher than the truck's shute could reach. The court said, at page 236: "It is true that the 'loading and unloading' provision in the Travelers policy issued to Consolidated is one of extension. (See *American Auto. Ins. Co.* v. *American Fidelity & Casualty Co. supra,* 106 Cal.App.2d 630, 635 [235 P.2d 645].) But it cannot be reasonably said that such expansion of the meaning of the term 'the use of' the motor vehicle is without limitation. In determining the scope of the coverage afforded, consideration must be given to the intention of the parties to the contract of insurance. It is not reasonable to conclude that such parties intended an extension of coverage to an accident occurring after concrete has been placed in a receptacle furnished by or on behalf of the purchaser and while it is being mechanically conveyed to a location some distance above the ground. This is so whether the place of ultimate use be many stories above the ground or whether the form in which the concrete is to be poured is at an elevation such as that involved in the present case."

In *San Fernando,* as in the case at bench, the accident occurred before the truck had been completely emptied.[2] The only distinguishing factor is that, in *San Fernando,* the parties originally had intended that the cement be poured directly from the truck into the forms but had changed the method of delivery when it was discovered that the forms (as here) were too high to be reached by the truck's delivery shute. In view of the rationale of the case, as above quoted, we regard that factual difference as immaterial.

In *Entz v. Fidelity & Casualty Co.* (1966) 64 Cal.2d 379 [50 Cal.Rptr. 190, 412 P.2d 382], cement, pursuant to the arrangement with the builder, was dumped on the ground at the construction site, to be shoveled, by the contractor, into post holes on the property. While the holes were being filled, a piece of iron fell from a fence onto an employee of the contractor. The Supreme Court held that the unloading

---

[2]Since both *San Fernando* and *Entz* regarded that fact as immaterial, we need not, and do not, consider the appellant's attack on one of the trial court's findings in that regard. The issue, in this case as in those cases, is whether the cement involved had been "unloaded" at the time of the accident, not whether other "unloading" was yet to take place.

process was complete when the cement was dumped on the ground. In spite of that factual difference, we cannot read *Entz* as holding anything other than that, in cases of delivery of cement,[3] the unloading process is complete when the cement has passed from the truck into the hands of the consignee. We quote the language of the Supreme Court that we deem controlling.

"California, however, is committed to the 'complete operations' rule. Accordingly, we must determine whether the cement has been placed in the hands of the receiver at the designated reception point, in which event the unloading operation with respect to the portion of the cement so delivered would have been completed, or whether the delivery operation was not to be completed until the cement had actually been placed in the post holes.

"The *San Fernando Valley Crane Service* case likewise involved the delivery of cement. There cement was emptied by a 'mixer truck' by means of a self-unloading device into a receptacle furnished by, or on behalf of, the purchaser and thereafter conveyed by a crane to an elevated location at a building site, where the concrete was to be used. After delivery of the concrete into the bucket receptacle, the deliveror exercised no control over the cement, the bucket receptacle, or the crane.

"In holding that the unloading operation had been completed and that there was therefore no coverage under the truck policy for an accident which occurred while the cement was being transported by the crane, the court said: 'In determining the scope of the coverage afforded, consideration must be given to the intention of the parties to the contract of insurance. It is not reasonable to conclude that such parties intended an extension of coverage to an accident occurring after concrete has been placed in a receptacle furnished by or on behalf of the purchaser and while it is being mechanically conveyed to a location some distance above the ground. . . .

---

[3]*Argonaut Ins. Co.* v. *Transport Indemn. Co.* (1972) 6 Cal.3d 496 [99 Cal.Rptr. 617, 492 P.2d 673], and *Donahue Constr. Co.* v. *Transport Indem. Co.* (1970) 7 Cal.App.3d 291 [86 Cal.Rptr. 632], relied on by Galloway, are not in point. In those cases, material was being removed *from the truck* by use of a fork-lift. Unlike the case at bench, in those cases, the material could not be removed from the truck except by using the fork-lift. The holding that the removal *from the truck,* in those cases, was part of the unloading process is inapplicable here where the cement could be, and was, removed from the delivery truck by the truck's own shute and the crane involved was neither necessary to, or involved in, the removal of the cement from the truck.

" ' . . . the more cogent reasoning leads to the conclusion that when Consolidated [the truck owner], as it had contracted to do, brought the concrete to the job site and deposited it in the receptacle provided by or on behalf of the purchaser, the truck was then unloaded insofar as the concrete so deposited was concerned. At that time that concrete had been placed in the hands of the receiver at the designated reception point.'

"In the present case, after the cement was dumped from the truck, the driver, like the driver in the *San Fernando Valley Crane Service* case, exercised no control over the cement or the shoveling operation."

Here, also, the cement had been delivered by Burden's driver into a receptacle provided by Galloway; Galloway, and not the driver, had total control over the movement of the cement and the bucket thereafter. The unloading process had been completed and the lifting of the cement-filled bucket involved no use of the delivery truck.

The judgment is affirmed.

Dunn, J., concurred.

**JEFFERSON (Bernard), J.,** Concurring.—I concur in the result reached by the majority but I do not agree with all of the views expressed in the majority opinion. In reaching its result, the majority relies upon a principle set forth that a prior decision of the Court of Appeal is.*binding* upon us. The case referred to is *San Fernando Valley Crane Service, Inc.* v. *Travelers Ins. Co.* (1964) 229 Cal.App.2d 229 [40 Cal.Rptr. 165]. The majority gives two reasons for the binding effect of the *San Fernando Valley* case: (1) that it is a decision by another division of the Second District of the Court of Appeal and (2) that it was cited with approval by the Supreme Court in the case of *Entz* v. *Fidelity & Casualty Co.* (1966) 64 Cal.2d 379 [50 Cal.Rptr. 190, 412 P.2d 382].

The emphasis placed by the majority upon the fact that the *San Fernando Valley* case was decided by another division of this district is beyond my comprehension. Perhaps the inference is that when a division of this Second District determines a point of law, all future cases on this point of law arising in any division of this Second District must be decided in exactly the same way, irrespective of one's belief as to the correctness of the prior decision. I know of no rule of law which requires us to be bound by a prior Court of Appeal decision, whether it be from a

division of the Second District or a division of any other district. In my view, we follow a prior Court of Appeal decision because we feel that it is correctly decided or that the point of law has become well settled and no sound reason is advanced for departing from the particular rule of law.

The majority cites no authority for the proposition that a Court of Appeal decision that is cited with approval by a Supreme Court case takes on an aura of conclusive effect upon us by virtue of such approval. To my knowledge this proposition has not been stated by the California Supreme Court to be the law. In *Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450 [20 Cal.Rptr. 321, 369 P.2d 937], the Supreme Court set forth the rule that courts exercising inferior jurisdiction are bound to follow the law as declared by courts exercising superior jurisdiction. The *Auto Equity Sales* case did *not* hold that courts exercising concurrent jurisdiction are required to follow the first decision announced upon a particular point of law or a decision cited with approval by a Supreme Court case. The pertinent statement from the *Auto Equity Sales* case is the following: "The decisions of this court are binding upon and must be followed by all the state courts of California. Decisions of every division of the District Courts of Appeal are binding upon all the justice and municipal courts and upon all the superior courts of this state, and this is so whether or not the superior court is acting as a trial or appellate court. Courts exercising inferior jurisdiction must accept the law declared by courts of superior jurisdiction. It is not their function to attempt to overrule decisions of a higher court. [Citations.]" (*Auto Equity Sales, supra,* 57 Cal.2d 450 at p. 455.)

The doctrine of stare decisis advocated in the majority opinion—especially involving Court of Appeal decisions from the same district—if generally adhered to, would have a stifling and suffocating effect on efforts to make critical evaluations of existing legal principles. The logic, reasonableness and soundness of particular rules of law must remain open to question and subject to change. The majority's view of the doctrine of stare decisis is unsupported by authority and, on the contrary, is inferentially rejected by *Auto Equity Sales.* There the court noted that "[u]nder the doctrine of *stare decisis,* all tribunals exercising *inferior* jurisdiction are required to follow decisions of courts exercising *superior* jurisdiction." (*Auto Equity Sales, supra,* 57 Cal.2d 450, at p. 455.) (Italics added.)

In the case at bench, we are certainly bound by the holding in *Entz*—which was decided by the Supreme Court—but we are not bound by the *San Fernando Valley* decision. The rule of law announced in the *San Fernando Valley* case and reiterated in *Entz* has become the accepted law of California. The facts of the instant case are indistinguishable in principle from the factual situations dealt with in *San Fernando Valley* and *Entz*. Under these circumstances I agree with the majority result that the judgment should be affirmed.

But I reach this result on the ground that the rule of law announced in *San Fernando Valley* is merely *persuasive,* while the same rule of law announced in *Entz* is *binding.* I cannot agree with the principle of reaching this result by declaring that the *San Fernando Valley* case is *binding* upon us.

Appellant's petition for a hearing by the Supreme Court was denied April 21, 1977.