ESTES COMPANY OF BETTENDORF, IOWA, Plaintiff-Appellee and
Counterplaintiff-Appellant, *v.* EMPLOYERS MUTUAL CASUALTY
COMPANY, Defendant-Appellant and Counterdefendant-Appellee.

Third District   No. 78-411

Opinion filed June 12, 1979.

Robert A. VanVooren and Dana M. Craig, both of Lane & Waterman, of
Davenport, Iowa, for Employers Mutual Casualty Company.

Ira J. Melaas, of Wingard, Schultz, Shearer & Melaas, of Rock Island, for Estes Company of Bettendorf, Iowa.

Mr. PRESIDING JUSTICE STOUDER delivered the opinion of the court:

The plaintiff, Estes Company of Bettendorf, Iowa, commenced a declaratory judgment action against the defendant, Employers Mutual Casualty Company, asserting that plaintiff was entitled to defense and indemnity under an automobile liability insurance policy issued by the defendant to the Rock Island Ready Mixed Concrete Company. The circuit court of Rock Island County entered judgment for plaintiff, and the defendant appealed. The facts preceding this action are not in dispute and were made the subject of a stipulation.

On September 20, 1974, plaintiff was acting as a general contractor on a building construction project. Plaintiff had entered into a subcontract with the Anderson Construction Company which provided Anderson would supply and pour concrete for the footings and foundation of the building. Concrete was supplied to Anderson at the jobsite by Rock Island Ready Mixed Company pursuant to an oral supply contract confirmed by written delivery tickets. Estes was not a party to the contract between Anderson and Ready Mixed. When the concrete was delivered to the jobsite by Ready Mixed, it was poured either directly into forms prepared by Anderson or into a concrete bucket connected to an overhead crane. The crane and bucket were used to transport the concrete from the truck to the forms. The crane was owned by H. A. P. Excavating Company, which was affiliated with Anderson.

According to the stipulation, the crane bucket was swung over to the Ready Mixed truck, which was parked on the site, where the bucket was filled by a Ready Mixed driver-employee. The bucket was then swung over to the location along or near the footings and foundation forms where the concrete was emptied from the bucket. When the seventh truck load of concrete arrived at the site, several buckets of concrete were removed utilizing this procedure and without event. The next bucket was filled with concrete as before, but as the crane was swinging the bucket into place, one of the cables of the crane came into contact with a high voltage electrical transmission line. Two Anderson employees, John Jones and Thomas Cosper, received electrical burns when the crane contacted the tension lines. At no time during delivery did Ready Mixed employees operate Anderson's crane. The Ready Mixed trucks were not contractually or otherwise leased to Estes or Anderson Construction Company, nor were the trucks borrowed by Estes or Anderson Construction Company for any purpose. Ready Mixed employees exercised sole possession and control of the Ready Mixed truck at all times material.

Cosper and Jones each filed a personal injury action against several defendants, including the plaintiff in this case. The suit against Estes was based on alleged violations of the Structural Work Act. (Ill. Rev. Stat. 1977, ch. 48, pars. 60 through 69.) Ready Mixed was not named a defendant by either Cosper or Jones.

At the time of the accident, Ready Mixed was insured under a policy of insurance issued by the defendant Employers, which provided coverage for bodily injury "caused by an occurrence and arising out of the * * * use, including loading and unloading, of any automobile and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury * * * ." As is relevant here, the policy provided an insured was:

"(c) Any other person while using an owned automobile or hired automobile with the permission of the named insured, providing his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission, but with respect to bodily injury or property damage arising out of the loading or unloading thereof, such other person shall be an insured only if he is:
(1) A leasee or borrower of the automobile, or
(2) An employee of the named insured, or of such leasee or borrower;
(d) Any other person or organization but only with respect to his or its liability because of acts or omissions of an insured under (a), (b), or (c) above."

Following discovery depositions in the Cosper and Jones actions, Estes wrote to Employers asserting coverage under the Ready Mixed policy and demanding defense and indemnity for the personal injury actions. Employers initially responded in July of 1976 denying liability and refusing to defend. The present action was filed on September 10, 1976. On September 13, 1976, Lane & Waterman, attorneys retained by Employers, filed an appearance on behalf of the Estes Company in the consolidated actions of Cosper and Jones. While the appearance was general, an attorney for Lane & Waterman testified that the appearance was filed "for the sole purpose of monitoring the status" because of difficulties he was having in obtaining any information from Estes' attorney who was defending the personal injury actions. It appears that Lane & Waterman did not participate at all in the defense of the personal injury actions.

In June of 1977 Employers made a written offer to Estes to defend the personal injury actions reserving its rights to subsequently deny any and all coverage, but also agreeing to be bound by any adverse determination of the declaratory judgment action. This offer was rejected.

In holding for plaintiff in this action, the circuit court concluded that plaintiff was an insured entitled to coverage under defendant's policy. The

court also found that the appearance of Lane & Waterman did not give rise to waiver or estoppel in favor of plaintiff and the refusal of defendant to defend the personal injury action was not unreasonable and did not constitute a wilful refusal to defend under the terms of the policy. We reverse.

The first issue we consider is whether the accident arose out of the unloading of the Ready Mixed truck. Plaintiff's position is essentially that the unloading was not completed until the concrete reached its ultimate destination, *i.e.*, the forms. The defendant argues that the unloading was completed when the concrete bucket was filled.

Decisions concerning unloading clauses have utilized one of two separate theories to determine when the unloading is complete, the "coming to rest" doctrine or the "complete operation" doctrine. Under the "coming to rest" approach, the unloading process includes only the actual moving of the article from the motor vehicle until it first comes to rest. When the article has begun to move toward its final destination by powers and forces independent of the motor vehicle, the motor vehicle is no longer connected with the process of unloading. *American Automobile Insurance Co. v. American Fidelity & Casualty Co.* (1951), 106 Cal. App. 2d 630, 235 P.2d 645.

Unloading under the broader "complete operation" doctrine includes all the operation necessary to effect a complete delivery of the article. (*Entz v. Fidelity & Casualty Co.* (1966), 64 Cal. 2d 379, 412 P.2d 382, 50 Cal. Rptr. 190.) This doctrine has been adopted in a number of jurisdictions. (See cases collected at Annot., 95 A.L.R.2d 1122 (1964).) Illinois courts have not expressly adopted or rejected either of the two doctrines, but an examination of *Coulter v. American Employers Insurance Co.* (1948), 333 Ill. App. 631, 78 N.E.2d 131, reveals that the fundamental concepts embodied in the "complete operation" doctrine provided the foundation for that decision.

> "When does the loading begin and the unloading cease? We think that the loading begins when the employees of the plaintiff connected with the truck receive the article and as part of a continuing operation place it upon the truck; and that the unloading ceases when the article is taken from the truck by such employees and as part of a continuing operation is delivered to the customer or to the place designated for delivery." (333 Ill. App. 631, 639, 78 N.E.2d 131, 135.)

After considering the foregoing authorities, we believe the "complete operation" doctrine to be the preferred view and find it applicable to the present case. See also *Davis v. Sheehan* (1976), 43 Ill. App. 3d 449, 357 N.E.2d 690.

Under the "complete operation" doctrine, delivery and unloading are

synonymous for practical purposes. (*Entz v. Fidelity & Casualty Co.* (1966), 64 Cal. 2d 379, 412 P.2d 382, 50 Cal. Rptr. 190.) However, the mere application of a particular label is not always determinative. (See *Schell v. Albrecht* (1978), 65 Ill. App. 3d 989, 383 N.E.2d 15.) Among those jurisdictions already committed to the complete operation doctrine, there exist different expressions of the doctrine with irreconcilable results. The conflict results from differing views as to when the unloading or delivery is completed. The position of some courts can be succinctly described as holding the unloading is complete when the material being delivered reaches its ultimate destination. (*Lamberti v. Anaco Equipment Co.* (1964), 16 App. Div. 2d 121, 226 N.Y.S.2d 70; *St. Paul Mercury Insurance Co. v. Huitt* (6th Cir. 1964), 336 F.2d 37; *Commercial Standard Insurance Co. v. American General Insurance Co.* (Tex. 1970), 455 S.W.2d 714; *Travelers Insurance Co. v. Employers Casualty Co.* (Tex. 1964), 380 S.W.2d 610.) These decisions all involved the delivery of premixed concrete and generally hold the unloading or delivery completed when the concrete reaches the "forms."

Other decisions nominally adhere to the same doctrine, but reach opposite conclusions based upon the same facts. (*Entz v. Fidelity & Casualty Co.* (1966), 64 Cal. 2d 379, 412 P.2d 382, 50 Cal. Rptr. 190; *United States Fidelity & Guaranty Co. v. Backus* (1966), 243 Md. 121, 220 A.2d 139; *Firemen's Fund Insurance Co. v. New Zealand Insurance Co.* (1968), 103 Ariz. 260, 439 P.2d 1020.) The following expression from *Entz* is representative of these decisions' formulation of the complete operation rule.

> " '[U]nloading' has been completed when, following removal of the material from the vehicle, deliveror has finished his handling of it, and it has been placed in the hands of the receiver at the designated reception point, even though it is necessary for the consignee, or someone on his behalf, to transport it thereafter to another point." (64 Cal. 2d 379, 383, 412 P.2d 382, 385, 50 Cal. Rptr. 190, 193.)

We believe the views expressed by *Entz, Firemen's Fund,* and *United States Fidelity & Guaranty* represent the more rational position. Furthermore, our decision is not without Illinois authority. The opinions in *Coulter v. American Employers Insurance Co.* (1948), 333 Ill. App. 631, 78 N.E.2d 131, and *Davis v. Sheehan* (1976), 43 Ill. App. 3d 449, 357 N.E.2d 690, generally considered that unloading was complete when delivery had been made to the purchaser at the place designated for delivery.

■■ In interpreting any contract of insurance it is important to determine and effectuate the intent of the parties. (*General Accident Fire & Life Assurance Corp. v. Brown* (1962), 35 Ill. App. 2d 43, 181 N.E.2d 191.) In determining this intent, express terms and conditions of the policy, as well

as its subject matter, the situation of the parties, the purpose of the contract and any other relevant matter may be considered. (*Cook v. Suburban Casualty Co.* (1964), 54 Ill. App. 2d 190, 203 N.E.2d 748.) In our opinion, the policy was intended to provide coverage for an insured until delivery to the purchaser had been completed.

Commercial delivery has been defined as including:

"[T]aking the articles from their usual place of storage or assembly to the place of designation and turning them over to the control or possession of the purchaser or receiver. Sometimes delivery may be made by depositing things on the sidewalk or on a platform or other convenient place. That, however, is usually indicated by the custom of the business or agreement of the parties. Normally a delivery is not completed until the deliveror has finished his handling of the article, has completed his assignment or task of putting the articles into the possession of the receiving party." *Pacific Automobile Ins. Co. v. Commercial Casualty Ins. Co.* (1945), 108 Utah 500, 510-11, 161 P.2d 423, 428.

■■ Here, it is unrebutted the custom of the business was that delivery of the premixed concrete to the purchaser was complete when placed in the first receptacle provided at the construction site. Under our particular facts Anderson, the purchaser, through its affiliate H.A.P. Excavating, provided the concrete bucket for Ready Mixed to make delivery of the concrete to. Events occurring subsequent to filling the bucket with concrete did not arise out of the unloading of the Ready Mixed truck. The fact that only part of the truck was unloaded is of no consequence, for as to the concrete placed in the bucket, delivery was already complete. See *Entz v. Fidelity & Casualty Co.* (1966), 64 Cal. 2d 379, 412 P.2d 382, 50 Cal. Rptr. 190.

■■ ■ The remaining issues may be summarily considered. We are unpersuaded by plaintiff's assertions that defendant waived his right to rely on policy defenses by refusing to defend the Cosper and Jones actions upon Estes' demand. Rock Island Ready Mixed was not named in the complaint of Cosper and Jones nor were any facts alleged in the complaints which could ostensibly give rise to potential coverage. Defendant's refusal to defend was proper under the circumstances. (See *Midwest Contractors Equipment Co. v. Bituminous Casualty Corp.* (1969), 112 Ill. App. 2d 134, 251 N.E.2d 349.) Plaintiff's claim that defendant is estopped to deny coverage because of the appearance of Lane & Waterman is similarly unavailing. Plaintiff never pleaded estoppel in its complaint, in reply to defendant's answer or in any amended pleading, even though it had ample opportunity to do so well in advance of the trial of the declaratory judgment action. The Civil Practice Act requires estoppel be affirmatively pleaded. (Ill. Rev. Stat. 1977, ch. 110,

par. 43.) Plaintiff's tardy efforts to raise an estoppel issue the morning of trial make it improper to raise the issue on appeal and therefore it is unnecessary to consider the issue.

For the foregoing reasons the judgment of the circuit court of Rock Island County is reversed.

Judgment reversed.

ALLOY and BARRY, JJ., concur.