(No. 52296.—

ESTES COMPANY OF BETTENDORF, IOWA, Appellant, v. EMPLOYERS MUTUAL CASUALTY COMPANY, Appellee.

*Opinion filed March 21, 1980.*

Ira J. Melaas, of Wingard, Schultz, Shearer & Melaas, of Rock Island, for appellant.

Robert A. VanVooren and Dana M. Craig, of Davenport, Iowa (Lane & Waterman, of counsel), for appellee.

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court:

Plaintiff, Estes Company of Bettendorf, Iowa, commenced an action for declaratory judgment in the circuit court of Rock Island County against defendant, Employers Mutual Casualty Company, seeking a declaration that plaintiff was an additional insured entitled to defense and indemnity under the provisions of an automobile insurance policy issued by Employers to the Rock Island Ready Mixed Concrete Company. The circuit court found, in addition to matters not relevant to this appeal, that Estes was entitled to coverage under Employers' policy, relying upon *Bituminous Casualty Corp. v. American Fidelity & Casualty Co.* (1959), 22 Ill. App. 2d 26, that the appearance filed by Employers' attorneys did not constitute a waiver or estoppel to assert the exclusions of the policy, and that Employers' refusal to defend was reasonable under the provisions of the policy. Both parties appealed this judgment to the appellate court. Employers sought review of the finding that the provisions of the policy afforded coverage to Estes. Estes sought review of the findings that Employers' refusal to defend was reasonable and that Employers had not waived and was not estopped from asserting the policy exclusions. The appellate court reversed the circuit court, holding that Estes was not entitled to coverage under the policy and that Employers had not waived and was not estopped to assert the policy exclusions. (72 Ill. App. 3d 509.) We allowed Estes' petition for leave to appeal.

The facts preceding the action in the trial court were not in dispute and were made the subject of a stipulation. This stipulation provided that on September 20, 1974, Estes was acting as a general contractor engaged in the construction of a building in Moline. Anderson Construction Company, a subcontractor, agreed to supply and pour the concrete for the footings and foundation of the building. Concrete was supplied to Anderson at the jobsite by

Rock Island Ready Mixed Concrete Company. Estes was not a party to the contract between Anderson and Ready Mixed. The concrete delivered by Ready Mixed was poured either directly into forms prepared by Anderson or into a bucket connected to an overhead crane. The crane and bucket were used to transport concrete from the Ready Mixed truck to locations where the concrete was to be placed in the forms. The crane was owned and operated by H. A. P. Excavating Company.

The parties also agreed that on September 20, 1974, six truckloads of concrete had been delivered to the jobsite between 1 p.m. and 4:30 p.m. by Ready Mixed. Between 4:30 p.m. and 5 p.m., the seventh load was delivered to the site. The crane bucket was swung over to the Ready Mixed truck, and the bucket was filled by a Ready Mixed driver-employee. The bucket was then swung over to locations along or near the footing and foundation forms where the concrete was emptied from the bucket. Several buckets of concrete were transported from the truck in this manner. As one bucket was being swung into position, the crane cable came in contact with high-voltage electrical-transmission lines owned and operated by Iowa-Illinois Gas and Electric Company. Two Anderson employees, Thomas Cosper and John Jones, suffered personal injuries when the crane and electrical lines came in contact.

The parties also agreed that Ready Mixed employees did not operate the crane at any time. The Ready Mixed trucks were not contractually or otherwise leased to Estes or Anderson, nor were the trucks borrowed by Estes or Anderson for any purpose. Ready Mixed employees exercised sole possession and control of the Ready Mixed trucks at all times here relevant.

The stipulation further provides that Ready Mixed was insured in accordance with the terms and conditions of an insurance contract issued by Employers. This contract provides coverage for bodily injury "caused by an

occurrence and arising out of the ownership, maintenance or use, including loading and unloading, of any automobile, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury ***." As relevant to the parties arguments in this court, the policy designates as an insured:

> "(a) the named insured;
> ***
>
> (c) any other person while using an owned automobile or a hired automobile with the permission of the named insured, provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission, but with respect to bodily injury or property damage arising out of the loading or unloading thereof, such other person shall be an insured only if he is:
>> (1) a lessee or borrower of the automobile, or
>> (2) an employee of the named insured or of such lessee or borrower;
>
> (d) any other person or organization but only with respect to his or its liability because of acts or omissions of an insured under (a), (b) or (c) above."

Cosper and Jones, the injured individuals, each filed personal injury actions against Estes, alleging violations of the Structural Work Act (Ill. Rev. Stat. 1973, ch. 48, par. 60 *et seq.*). Ready Mixed was not named a defendant in either of these actions.

Estes contends that the injuries to Cosper and Jones arose out of the acts or omissions of Ready Mixed, the named insured, in unloading the cement. Estes argues that its liability under the Structural Work Act (Ill. Rev. Stat. 1977, ch. 48, par. 60 *et seq.*) is derivative, and for this reason it is an insured under clause (d) of the policy issued by Employers. In support of this position, Estes argues that the appellate court erred in concluding that the injuries to Cosper and Jones did not arise out of the unloading of the Ready Mixed truck. Estes contends that the process of unloading is not completed until the cement reaches its ultimate destination, in this case, the cement

forms. The appellate court found that unloading was completed when delivery was accomplished, *i.e.*, when the cement was deposited in the bucket. Employers asks us to affirm the appellate court on this issue. The issue of whether Estes was an insured under clause (d) of this policy focuses initially on whether the injuries to Cosper and Jones arose out of a use of the Ready Mixed truck provided in the contract, in the present case, the unloading of the truck. Estes does not contend that it was an insured under any other clause of the policy.

Loading and unloading clauses have been a feature of insurance policies for many years. A substantial body of case law has developed to assist in the construction of these clauses in particular situations. As the appellate court has noted, the decisions construing unloading clauses have utilized one of two theories to determine when unloading is complete, the "coming to rest" doctrine or the "complete operations" doctrine. Under the "coming to rest" approach, the unloading process includes only the actual moving of the article from the motor vehicle until it first comes to rest. When the article has begun to move toward its final destination, independent of the motor vehicle, the vehicle is no longer connected with the process of unloading. (See *American Automobile Insurance Co. v. American Fidelity & Casualty Co.* (1951), 106 Cal. App. 2d 630, 235 P. 2d 645.) Unloading under the "complete operations" doctrine, however, includes all the operations necessary to effect a completed delivery. (See *Entz v. Fidelity & Casualty Co. of New York* (1966), 64 Cal. 2d 379, 412 P.2d 382, 50 Cal. Rptr. 190.) We agree with the appellate court that the "complete operations" doctrine, which embraces all of the operations necessary to effect a completed delivery of the article, is the preferred view. See Magarick, *Loading and Unloading Under the Standard Automobile Policy*, 67 Dick. L. Rev. 257, 258-59 (1963); Risjord, *Loading and Unloading*, 13 Vand. L. Rev. 903, 904 (1960); Annot., 95 A.L.R.2d 1122, 1129 (1964).

The mere assertion of the "complete operations"

doctrine, however, will not serve to resolve this case. Those courts which have adopted this doctrine have arrived at inconsistent conclusions in resolving substantially similar controversies. Some courts following this rule have held that "unloading" is not completed until the material has been delivered to its ultimate destination, in the present case, the concrete forms. (See *St. Paul Mercury Insurance Co. v. Huitt* (6th Cir. 1964), 336 F.2d 37, 42; *Employers' Liability Assurance Corp. v. Travelers Insurance Co.* (D. Conn. 1968), 293 F. Supp. 604, 607.) Other courts, applying the same doctrine, have held that loading is completed when commercial delivery has been accomplished. See *Galloway Crane & Trucking Co. v. Truck Insurance Exchange* (1977), 67 Cal. App. 3d 386, 391, 136 Cal. Rptr. 645, 648; *Liberty Mutual Insurance Co. v. Johnson, Drake & Piper, Inc.* (8th Cir. 1968), 390 F.2d 410, 416.

Although it is true that the loading and unloading clause expands the scope of activities included within the use of the vehicle, we do not believe that the parties intended to extend coverage to an accident occurring after the concrete has been placed in a receptacle furnished by or on behalf of the purchaser. (*Galloway Crane & Trucking Co. v. Truck Insurance Exchange* (1977), 67 Cal. App. 3d 386, 390, 136 Cal. Rptr. 645, 646.) We believe it more reasonable to hold that "unloading" has been completed when, subsequent to removal of the material from the vehicle, the deliverer has finished his handling of it, and the material has been placed in the hands of the receiver at the designated reception point, despite the fact that it is necessary to transport the material thereafter to another point. In reaching this conclusion, we are persuaded by the reasoning of the California Supreme Court in *Entz v. Fidelity & Casualty Co. of New York* (1966), 64 Cal. 2d 379, 385, 412 P.2d 382, 386, 50 Cal. Rptr. 190, 194.

In the present case, it is unrebutted that the custom in the industry is that delivery of the premixed concrete to

the purchaser is complete when placed in the first receptacle provided at the construction site. The injuries to Cosper and Jones occurred subsequent to delivery of the cement to Anderson Construction Company. The truck was unloaded so far as the concrete deposited in the bucket was concerned. At that point the concrete had been placed in the hands of the receiver at the designated reception point. Ready Mixed exercised no control over the cement, the bucket, or the crane. We therefore hold that the injuries to Cosper and Jones did not arise out of the unloading of the vehicle.

Estes argues that because the Ready Mixed truck was only "partially unloaded," the injuries occurred within the process of unloading, and therefore within the terms of the policy. We have already determined that Ready Mixed had accomplished delivery of the cement when it was placed in the receptable provided by Anderson. The fact that there remained additional material to be delivered will not serve to bring these subsequent injuries within the scope of the unloading clauses. Because we have determined that these injuries did not arise out of a use of the vehicle, as defined in the policy, we need not consider if, under any theory, Estes is an insured.

Estes argues in the alternative that Employers waived its right to rely upon the policy defenses by refusing to defend and that Employers is estopped from asserting the policy defenses by virtue of the general appearance of its attorneys in the Cosper and Jones personal injury actions. On June 1, 1976, following the taking of discovery depositions in the Cosper and Jones actions, Estes wrote to Employers asserting coverage under the Ready Mixed policy and demanding defense and indemnity for the personal injury actions. Employers responded in July of 1976, denying liability and refusing to defend. The present action was filed on September 10, 1976. On June 29, 1977, Employers offered to defend Estes, subject to a reservation of the policy exclusions, pending the outcome

of the present action. This offer was refused by Estes. On September 13, 1977, Lane and Waterman, attorneys retained by Employers, filed a general appearance on behalf of Estes in the then consolidated actions of Cosper and Jones. An attorney for the firm testified that he had difficulty obtaining documents and that the appearance was filed for the sole purpose of maintaining the status of the lawsuit. We agree with the appellate court's holding that defendant had not waived its right to rely on the policy defenses by refusing to defend. The duty to defend is determined by the allegations in the complaint. Ready Mixed was not named in the complaints of Cosper or Jones, nor were any facts alleged which would ostensibly give rise to potential coverage. (*Maryland Casualty Co. v. Peppers* (1976), 64 Ill. 2d 187, 193.) We also agree with the appellate court that plaintiff's failure to raise estoppel in its pleadings in the trial court, raising this issue for the first time on the morning of trial, fails to preserve this issue for review. (*County of Cook v. Priester* (1976), 62 Ill. 2d 357, 371.) Estoppel should have been affirmatively pleaded. Ill. Rev. Stat. 1977, ch. 110, par. 43.

For the reasons stated, we affirm the judgment of the appellate court.

*Judgment affirmed.*