[Civ. No. 38174. First Dist., Div. Three. Feb. 4, 1977.]

MANHATTAN FIRE AND MARINE INSURANCE
COMPANY, Plaintiff and Respondent, v.
TRAVELERS INSURANCE COMPANY,
Defendant and Appellant.

**COUNSEL**

Moore, Rode, Clifford, Wolfe & Larson and Cyril Viadro for Defendant and Appellant.

Eliassen, Postel & Mee and Roger B. Eliassen II for Plaintiff and Respondent.

## OPINION

**EMERSON, J.**\*—Appellant Travelers Insurance Company (hereafter Travelers) appeals from a judgment granted in favor of respondent Manhattan Fire and Marine Insurance Company (hereafter Manhattan) which decreed that a Travelers' policy provided insurance coverage for liability arising out of an accident which took place during the unloading and pumping of concrete. The judgment required Travelers to reimburse Manhattan for its (Travelers') pro rata share of the settlement negotiated by counsel for Manhattan in connection with the lawsuit arising from the accident.

On September 7, 1965, Manhattan's insured, Paul Maney, and Travelers' insured, Berkeley Ready Mix Company (hereafter Ready Mix) were engaged in delivering concrete into a culvert at a construction site. Ready Mix' cement truck supplied the concrete by unloading it down a chute and into the hopper of Maney's concrete pumper which pumped the concrete through flexible hoses and into the culvert. Ready Mix' job was to keep the hopper full with concrete while Maney, the pumper operator, controlled the flow of concrete from his pumper through the hoses. Both Maney and Ready Mix were under the general supervision of the job superintendent. After the unloading operation had begun, one of the pumper hoses which led into the culvert apparently jammed. The flow of concrete was ordered stopped and Maney attempted to take pressure off the system by uncoupling the hose. When he did this, the hose whipped out and injured the job superintendent.

Travelers' policy provided insurance coverage for all liability arising out of the "use" of Ready Mix' truck, including loading and unloading operations. Manhattan's policy provided Maney with coverage for liability arising out of the use of his pumper. The job superintendent sued both insureds. Manhattan defended the lawsuit and entered into a settlement with the plaintiff for $50,000. It thereupon instituted this action seeking a declaratory judgment that Travelers' policy provided coverage for the accident and that accordingly Travelers be ordered to pay Manhattan its (Travelers') pro rated share of sums incurred for

---

\*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

settlement and defense of the case. The trial judge found in favor of Manhattan. Each company's "other insurance" clause provided that where there is other insurance for the same accident, damages shall be pro rated between such coverage in such proportion as each coverage bears to the total limit of liability. Travelers' policy limit was $300,000 while Manhattan's policy limit was $100,000. Travelers was ordered to pay $40,008.96 (75 percent of the total expenses).

Travelers' sole contention on appeal is that under the undisputed facts of this case the trial judge erred in granting judgment for Manhattan, since as a matter of law, the use of the Ready Mix truck could not have constituted "unloading" of the vehicle and therefore could not have been covered under the Travelers policy.

In determining whether an activity constitutes "unloading" within the meaning of that term in an insurance policy, California follows the "complete operations" rule. (*Entz* v. *Fidelity & Casualty Co.* (1966) 64 Cal.2d 379, 384 [50 Cal.Rptr. 190, 412 P.2d 382].) Under this rule, "unloading" is regarded as "embracing all the operations which are required in any specific situation to effect a completed delivery of the article. . . . [¶] [T]he number of temporary or intermediate stops or resting places is immaterial." (*Id.,* at p. 382.) The California Supreme Court further characterized the distinction as follows: " 'unloading' has been completed when, following removal of the material from the vehicle, the deliveror has finished his handling of it, and it has been placed in the hands of the receiver at the designated reception point, even though it is necessary for the consignee, or someone on his behalf, to transport it thereafter to another point." (*Id.,* at p. 383.)

It was further said in *Entz* that "where an accident occurs while materials being removed from a vehicle are in continuous movement and have not yet come to a rest, coverage is applicable . . . provided . . . there is some causal relationship between the accident and the use of the vehicle." (64 Cal.2d at p. 383.) The court noted that under such circumstances, the person conducting the unloading operations is covered by the policy whether he is the driver of the vehicle, a consignee, or a third person.

In the instant case, it is incontrovertible that a causal relation-ship existed between the use of the mixer truck and the accident: Ready Mix could not deliver the concrete to the designated area unless Maney's pumper pumped it there; Maney could not pump the concrete unless his hopper was constantly supplied with concrete from the mixer truck; and completed delivery of the concrete could not be made unless Maney unclogged the hoses. At the time of the accident, Maney was attempting to effect completion of the process of unloading the concrete from the mixer to the culvert, a process of which his pumper was an integral part, and a process which had not been completed.

Travelers claims that the instant case falls squarely within the rule of *San Fernando Valley Crane Service, Inc.* v. *Travelers Ins. Co.* (1964) 229 Cal.App.2d 229 [40 Cal.Rptr. 165]. There, a cement mixer truck unloaded concrete into a bucket receptacle. The receptacle was then lifted by a crane and the concrete poured to where it was needed elsewhere on the construction site. While the crane was transporting the bucket receptacle, its boom collapsed injuring a worker. The crane service claimed that the mixer truck's insurance policy covering the use of the truck provided coverage for the accident since the truck was in the process of being "unloaded." The court acknowledged the principle that the phrase "loading and unloading" in insurance contracts is one of extension which *expands* the term "use of" beyond its usual connotation, covering some acts in which the motor vehicle itself does not play a part. (See *Amer. Auto. Ins. Co.* v. *Amer. Fid. & Cas. Co.* (1951) 106 Cal.App.2d 630, 634-635 [235 P.2d 645].) Nevertheless it was held that it would be unreasonable to conclude that the parties intended coverage to extend to an accident occuring after the concrete had been placed in its designated receptacle and was in the process of being transported somewhere else. (*San Fernando Valley Crane Service, Inc.* v. *Travelers Ins. Co., supra,* 229 Cal.App.2d 229, 236.) The court reasoned "when [the mixer truck], as it had contracted to do, brought the concrete to the job site and deposited it in the receptacle provided by or on behalf of the purchaser, the truck was then unloaded insofar as the concrete so deposited was concerned. At that time that concrete had been placed in the hands of the receiver at the designated reception point." (*Id.,* at pp. 236-237.)

We cannot accept the argument of Travelers that the use of the bucket in the *San Fernando* case was identical with the use of the pumper in this. In *San Fernando,* the concrete had been delivered into the hands of

the consignee. Once the concrete had been unloaded into the bucket, the duties of the mixer truck were ended. In the present case, Berkeley Ready Mix contracted to deliver concrete to the job site, not to Maney's pumper. Pumping was merely the method used to complete the delivery.

This case is thus more analogous to *Colby* v. *Liberty Mutual Ins. Co.* (1963) 220 Cal.App.2d 38 [33 Cal.Rptr. 538], where a crane was used to transport steel girders from the insured truck to the site where the girders were to be emplaced, and the crane caused one of the girders to strike the truck driver. The crane was merely the instrumentality used for unloading the girders and the crane operator was held to have been engaged in "unloading" the truck under the provision of the policy. Similarly here, Maney's pumper was that instrumentality employed by the Ready Mix truck for achieving delivery of the concrete material to the site of the culvert. Maney, as operator of the pumper, was therefore engaged in the "unloading" operation of the mixer truck. Under California's "complete operations" rule Maney was a permissive user of the Ready Mix truck, in that he was engaged in unloading concrete therefrom.

Travelers' emphasis of the fact that the Ready Mix truck was equipped with a "self-unloading device" is not convincing. In *San Fernando Valley Crane Service, Inc.* v. *Travelers Ins. Co., supra,* 229 Cal.App.2d 229, 236, the court noted that the fact that a motor vehicle has a self-unloading device of some kind is not in and of itself determinative of the question of coverage under a "loading and unloading" provision of an insurance policy. Rather it was determined to be "significant" under the particular facts of that case.

Travelers' reliance on *International Business Machines Corp.* v. *Truck Ins. Exch.* (1970) 2 Cal.3d 1026 [89 Cal.Rptr. 615, 474 P.2d 431] is misplaced. That case simply held that a shipper's mere *maintenance of premises* used for loading and unloading is not a sufficient basis for finding that the shipper was a "user" of the vehicle unloaded. The public policy concern of *International Business Machines* and subsequent cases is that the shipper may be discouraged to exercise due care in maintaining loading premises if he may always rely on the insurance coverage of the vehicle being unloaded. (*Id.,* at p. 1032; see also *Dillon* v. *Hartford Acc. & Indem. Co.* (1974) 38 Cal.App.3d 335, 340-341 [113 Cal.Rptr. 396].)

In conclusion, we note the finding of the trial court that "[t]he concrete truck and the concrete pump were interdependent so that the use of one was the use of the other during the continuing operation of delivery of concrete." Under the facts of this case, that finding was correct.

The judgment is affirmed.

Scott, Acting P. J., and Devine, J.,* concurred.

A petition for a rehearing was denied March 4, 1977, and appellant's petition for a hearing by the Supreme Court was denied April 21, 1977.

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.