**Richard J. MEDEIROS, Gale Medeiros, Plaintiffs,**

v.

**Ernest W. WHITCRAFT and Lester Fellows, Inc., Defendant/Third–Party Plaintiff,**

v.

**E.T. & L. CONSTRUCTION CORPORATION, Third–Party Defendant.**

Civil Action No. 94–12601–MLW.

United States District Court, D. Massachusetts.

July 15, 1996.

---

Stuart A. Romm, Law Offices of Stuart Romm, P.C., Fall River, MA, for plaintiffs Richard J. Medeiros, Gale Medeiros.

Christopher C. Mathers, Mathers & Mathers, Brockton, MA, for consolidated plaintiff David McCarron.

Scott D. Peterson, Thomas F. Healy, Healy & Healy, Boston, MA, for defendant Lester Fellow, Inc.

Thomas F. Healy, Healy & Healy, Boston, MA, for defendant Ernest W. Whitcraft.

Scott D. Peterson, Healy & Healy, Boston, MA, Rosemary A. Macero, Morrison, Mahoney & Miller, Boston, MA, for third-party defendant E.T. & L. Construction Corporation.

*MEMORANDUM AND ORDER ON MO-TION FOR SUMMARY JUDGMENT OF E.T. & L. CONSTRUCTION COR-PORATION ON THIRD–PARTY CLAIMS AND MOTION FOR ENTRY OF SEPARATE AND FINAL JUDG-MENT UNDER F.R.C.P. 54(b) (# 35)*

COLLINGS, United States Magistrate Judge.

## I. INTRODUCTION

On July 9, 1993, the plaintiffs, Richard Medeiros (hereinafter "Medeiros") and David McCarron (hereinafter "McCarron") were struck by cast iron ductile pipe while traveling in a pickup truck on Whitman Street in Bridgewater, Massachusetts. At the time of the accident, Medeiros was the operator of the vehicle and McCarron was a passenger. The cast iron pipe fell from a tractor trailer owned by defendant, Lester Fellows, Inc. (hereinafter "Fellows"), and operated by its employee, defendant Ernest W. Whitcraft (hereinafter "Whitcraft").[1]

Medeiros and McCarron brought separate tort actions against Fellows and Whitcraft (collectively referred to as the "defendants") which were later consolidated. In their complaints, both Medeiros and McCarron claimed that the defendants were negligent due to Whitcraft's alleged failure properly to secure the load of pipe.[2] In addition, Medeiros' wife, Gale Medeiros (hereinafter "G. Medeiros"), asserted a claim for loss of consortium.

The defendants subsequently filed a third-party action for contribution against E.T. & L. Construction Corporation (hereinafter "E.T. & L."), the consignee of the pipe involved in the accident. In response, together with its answer to the third-party plaintiffs' complaint, E.T. & L. filed a two count counterclaim seeking indemnification and contribution for any damages paid to the plaintiffs. E.T. & L. asserts that it was not the negligent party and, consequently, cannot be the proximate cause of the plaintiffs' injuries.

E.T. & L. seeks summary judgment in connection with the third-party claims, i.e., the defendants' contribution claims as well as its own claims for indemnification. Both defendants and plaintiffs filed memoranda of law in opposition to E.T. & L.'s dispositive motion. After hearing, the matter is ripe for decision.[3]

## II. FACTS

Fellows is a shipping company that transports building and construction materials on flatbed trailers, mainly ductile iron pipe for United States Pipe and Foundry Company (hereinafter "U.S. Pipe"). (Memorandum of Law, # 35, ex. 5) E.T. & L. purchased pipe from U.S. Pipe through Public Works Company, Inc. (hereinafter "Public Works") in Danvers, Massachusetts, ordering 20 pieces of pipe and various fittings to be delivered at a bridge construction site on Route 104 in Bridgewater, Massachusetts.[4] (# 35, ex. 1)

As per customary practice, U.S. Pipe contracted with Fellows to deliver the pipe and fittings from its plant in Burlington, New Jersey, to E.T. & L. at Bridgewater, Massachusetts. (*Id.*) U.S. Pipe also requested the defendants to make a partial delivery of 20 pieces of pipe to Public Works in Danvers, Massachusetts. (*Id.*)

1. Whitcraft has since passed away and a Suggestion of Death was filed on December 6, 1995.

2. McCarron's action was settled in March, 1996. Although E.T. & L. contends that its indemnification claim in that case is still outstanding, as indicated at oral argument, the Court shall decide the indemnification question in the context of the remaining *Medeiros* case.

3. All parties have consented to have the case referred to the undersigned United States magistrate judge pursuant to 28 U.S.C. § 636(c), and the district judge to whom this case was assigned has referred the case pursuant to said consent.

4. There appears to be a dispute as to the amount of pipe ordered by E.T. & L. *Compare,* # 35, ex. 1 with # 35, ex. 1 to ex. 1. This question of fact is not material in the context of the instant motion.

On July 9, 1993, at or about 7:30 a.m., Whitcraft delivered 20 pieces of pipe to Danvers which were unloaded by Public Works' employees. (# 35, ex. 2; # 37, ex. 7) Whitcraft then proceeded to the E.T. & L. construction site, where he arrived at about 10:00 a.m. that morning at the west side of the bridge. (# 35, ex. 1, 2 & 3)[5] Whitcraft was instructed by a worker at the site first to go to the east side of the bridge via a four-mile detour on Whitman Street. (# 35, ex. 3) At the east side of the bridge, employees of E.T. & L. unloaded 13 pieces of pipe under the supervision and instruction of John Ablondi (hereinafter "Ablondi"), an E.T. & L. supervisor. (# 35, ex. 1) Whitcraft then requested E.T. & L. personnel to move several pieces of pipe from the rear pile on the trailer to the front pile on the trailer in order to balance the load; E.T. & L. employees did this again under the supervision of Ablondi. (# 37, ex. 8) Ablondi admits that he did not check the trailer after the E.T. & L. employees moved the pipes, but he did observe Whitcraft secure the load of pipe with chains. (# 35, ex. 1; # 37, ex. 8) Ablondi directed Whitcraft to deliver the remainder of E.T. & L.'s order of pipe to the other side of the bridge.[6] (# 37, ex. 8)

Whitcraft took the same detour back to the west side of the bridge to deliver the final seven pieces of pipe. (# 35, ex. 3) While enroute, five pieces of pipe fell from the trailer and struck Medeiros' vehicle which was traveling on Whitman Street in the opposite direction. (*Id.*)

### III. SUMMARY JUDGMENT STANDARD

■ The summary judgment standard in this Circuit is familiar. When considering the propriety of the entry of summary judgment, the Court must determine whether:

... the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is a genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56(c).

In making this assessment, the Court is to examine the materials presented "in the light most favorable to the non-moving party and indulge in all inferences in that party's favor." *Moody v. Boston and Maine Corporation*, 921 F.2d 1, 5 (1 Cir., 1990) (citation omitted); *Casas Office Machines Inc. v. Mita Copystar America, Inc.*, 42 F.3d 668, 684 (1 Cir., 1994).

■ A factual dispute which is neither "genuine" nor "material" will not survive a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In deciding whether a factual dispute is "genuine" the Court must determine whether the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id., see also *National Amusements, Inc. v. Town of Dedham*, 43 F.3d 731, 735 (1 Cir., 1995); *Vasapolli v. Rostoff*, 39 F.3d 27, 32 (1 Cir., 1994). In weighing whether a factual dispute is "material" the Court must examine the substantive law of the case, for "only disputes over the facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510; *National Amusements*, 43 F.3d at 735; *Vasapolli*, 39 F.3d at 32.

■ Rule 56 does not permit the party opposed to the summary judgment motion to rest upon the mere allegations or denials in its own pleadings. Rather, as stated by the Supreme Court:

The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case,

---

5. Both parties reference and cite to Exhibit 3 to E.L. & T.'s Motion for Summary Judgment (# 35). It is open to question whether this document would be admissible under the rules of evidence, but from all appearances the statements therein do not seem to be in dispute, and none of the parties have objected to the Court considering this exhibit.

6. At this time there was more pipe on the tractor trailer than was necessary to fill the remainder of E.T. & L.'s order.

and on which the party will bear the burden of proof at trial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); see also *National Amusements,* 43 F.3d at 735.

Moreover,

[e]ven in cases where elusive concepts such as motive and intent are at issue, summary judgment may be appropriate if the non-moving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation.

*Rivera–Cotto v. Rivera,* 38 F.3d 611, 613 (1 Cir., 1994) quoting, *Medina–Munoz v. R.J. Reynolds Tobacco Company,* 896 F.2d 5, 8 (1 Cir., 1990); see also *Mesnick v. General Electric Company,* 950 F.2d 816, 822 (1 Cir., 1991).

## IV. DISCUSSION

### A. Contribution

 With respect to the contribution claims, E.T. & L. argues that it is the duty of the driver to make sure that the load is safely secured before the driver can drive the vehicle. Therefore, it is the defendants who should be liable for the injuries suffered by the plaintiffs. In support of its contention, E.T. & L. relies upon the regulation codified at 49 C.F.R. § 392.9, which states:

(a) General. No person shall drive a commercial motor vehicle and a motor carrier shall not require or permit a person to drive a commercial motor vehicle unless

(1) a commercial motor vehicle cargo is properly distributed and adequately secured as specified in § 393.100 through § 393.106 of this chapter.

(b) ... the drivers of trucks and truck tractors must—

(1) assure himself/herself that the provision of paragraph (a) of this section have been compiled with before he/she drives commercial motor vehicle.

According to this regulation, it was the duty of Whitcraft, the driver of the tractor trailer,

to make sure the load of pipe he was transporting was secured. While certainly imposing a duty upon the driver, this regulation does not, by its terms, necessarily relieve other parties of potential liability. The defendants assert that E.T. & L. may be still bound by a duty arising out of common law and/or contractual relationships with Fellows. *Locicero v. Interpace Corp.,* 83 Wis.2d 876, 884, 266 N.W.2d 423, 427 (1978).[7]

The *Locicero* case is remarkably similar on its facts. While in transit, the cargo on a flatbed trailer, cement sewer pipes, shifted, rolled off onto the highway and struck a van, injuring the passengers severely. The passengers sued the owner of the tractor trailer, the driver, the manufacturer of the pipes and their respective insurers; all of the plaintiffs' claims were settled, leaving only a contribution claim as between the owner of the trailer and its insurer left to be tried. The jury ultimately found that the manufacturer who had loaded the pipe onto the flatbed was 55% negligent, while the truck owner and its driver were 45% negligent. The court thereafter directed a verdict for the manufacturer, concluding that there was insufficient evidence presented as to its causal negligence; the owner of the trailer, its insurer and the truck driver appealed.

 The manufacturer who directed the loading of the flatbed argued that it could not be held liable to the plaintiffs due to

state statutes and federal regulations which impose an express duty on a carrier to secure all loads safely. It argues that a shipper may not be held liable for a breach of a duty which is by statute imposed exclusively on the carrier.

*Locicero,* 83 Wis.2d at 882, 266 N.W.2d at 426–7.

The court concluded that even in a state like Wisconsin where a violation of a safety statute is treated as negligence per se,

The negligence of one tortfeasor may be established by proof of a breach of safety regulations, such as sec. 348.10, Stats., and 49 C.F.R. 292.9 (1968), while the negli-

---

7. The defendants indicate that they were unable to find any Massachusetts case law on point.

The Court was equally unsuccessful in its search.

gence of another may be established by the proof of a breach of the common law duty of ordinary care. We hold that sec. 348.10, Stats., and the federal safety regulations impose a clear statutory duty on the carrier to secure the load safely, but they do not relieve those who breach a common law duty of care from liability for their negligence and their comparative share of the resulting damage.

*Locicero,* 83 Wis.2d at 885, 266 N.W.2d at 427.

The First Circuit has noted that

[i]n Massachusetts, violating a safety statute does not, as a general rule, constitute negligence per se. Nevertheless, such a violation can be evidence of negligence. In other words, proof that a statute has been violated constitutes some evidence of negligence "as to all consequences that statute was intended to prevent."

*Swift v. United States,* 866 F.2d 507, 508 (1 Cir., 1989) (citations omitted).

Accordingly, the reasoning of the *Locicero* case is equally applicable to the case at bar.

There is evidence from which it could be found that on the day of the accident, Whitcraft had driven from New Jersey to Danvers, Massachusetts, delivered part of his load of pipes, and thereafter proceeded and arrived at Bridgewater, Massachusetts, all without incident. After E.T. & L.'s employees unloaded 13 pieces of pipe at the east side of the bridge, E.T. & L's supervisor, Ablondi, directed Whitcraft to return to the west side of the bridge via the detour to complete the delivery of the pipes. Prior to proceeding, Whitcraft asked that E.T. & L. employees move some of the pipes remaining on the truck in order to balance the load. This they did, moving five of the pipes from the back pile to the front.

Whitcraft stated that while it was his responsibility to put the chains back over the load and to put the binders down, it was the E.T. & L. employees' responsibility to rechock the load and secure it as well as they could. It is undisputed that Ablondi did not check the tractor trailer after the pipes had been moved by E.T. & L. employees, and that Whitcraft did rechain the load. As Whitcraft drove on the detour, which was a public way, the very pipes that were shifted by the E.T. & L. employees fell off the flatbed.

When E.T. & L. undertook to move the pipes on the truck, in was incumbent upon the employees to use reasonable care in performing this job knowing that the tractor trailer would be travelling on the public way. Given these facts and the permissible inferences arising therefrom, it is a question for the jury to decide whether E.T. & L. was negligent. The duty imposed by the regulations upon the driver, Whitcraft, does not relieve E.T. & L. of responsibility for any independent negligence that the jury may find.

 As a consignee, E.T. & L. has a legal duty to unload. *Secretary of Agric. of U.S. v. U.S.,* 347 U.S. 645, 647, 74 S.Ct. 826, 828, 98 L.Ed. 1015 (1954). "The general rule is that it is the responsibility of the carrier ... to 'deliver' the goods by placing them in such a position as to make them accessible to the consignee. Normally unloading is not a part of the delivery and is performed by the consignee." *Secretary of Agric.,* 347 U.S. at 647, 74 S.Ct. at 828. Although unloading could become the duty of the carrier by contract, *Intech, Inc. v. Consolidated Freightways, Inc.,* 836 F.2d 672, 675 (1 Cir., 1987), in this instance the bill of lading reflects that "the customer", that being E.T. & L., was required to unload. Pursuant to this contractual duty, E.T. & L. " ... is liable to third persons not parties to the contract who are foreseeably exposed to danger and injured as a result of its negligence failure to carry out that obligation." *Parent v. Stone & Webster Engineering Corp.,* 408 Mass. 108, 113, 556 N.E.2d 1009, 1012 (1990).

It need not be decided whether E.T. & L. had any contractual liability for events that occurred during the transporting of the pipe from one end of the bridge to the other side.[8]

---

**8.** Such liability would depend upon how the term "unloading" is defined. For example, the term could be defined by the "complete operation" rule as "a continuous operation from the time the truck came to a stop and the transportation ceased until the [goods were] delivered to

As earlier determined, once it took on the affirmative duty to shift the load of pipe, E.T. & L. was bound under principles of common law to perform that process with reasonable care.

■ It is next argued that the defendants' negligence in any event was a superseding and intervening cause of the injury to the plaintiffs such as would relieve E.T. & L. of any liability. However, this is not an issue suitable for summary judgment. According to Restatement (Second) of Torts § 453 comment b,

'[i]f ... the negligent character of the third person's intervening act ... is a factor in determining whether the intervening act relieves the actor from liability for his antecedent negligence, and under the undisputed facts there is room for reasonable differences of opinion as the whether such act was negligent or foreseeable, the question should be left to the jury.'

*Solimene v. Grauel & Co.,* 399 Mass. 790, 795, 507 N.E.2d 662, 666 (1987) (quoting Restatement (Second) of Torts (1965)).

In short, "[g]enerally questions of causation, proximate and intervening, present issues for the jury to decide." *Id.,* 399 Mass. at 794, 507 N.E.2d at 665 (citations omitted).

### B. Indemnification

Turning to the second aspect of this dispositive motion, E.T. & L. has proffered little, if any, argument in support of its claimed right to the entry of summary judgment in its favor on the indemnification claims. In its counterclaim, E.T. & L. alleges that it is entitled to both contractual and common law indemnification against the third-party plaintiffs.

■ In surveying the relevant caselaw, the First Circuit recognized that:

Three different circumstances may give rise to a right to indemnification. First, an express agreement may create a right

to indemnification. Second, a contractual right to indemnification may be implied from the nature of the relationship between the parties. Third, a tort-based right to indemnification may be found where there is a great disparity in the fault of the parties.

*Araujo v. Woods Hole, Martha's Vineyard, Nantucket Steamship Authority,* 693 F.2d 1, 2 (1 Cir., 1982) (citations omitted); *Accord, Putnam v. DeRosa,* 963 F.2d 480, 485 (1 Cir., 1992).

As in the *Araujo* case, none of these theories are applicable to the facts at hand and, consequently, cannot support E.T. & L.'s claims for indemnification.

■ First, there is absolutely no express contract between Fellows/Whitcraft and E.T. & L. relating to, or providing for, indemnification by and between the parties in case of loss or injury. Next, with respect to the second theory

... a contractual right to indemnification will only be implied when there are unique special factors demonstrating that the parties intended that the would-be indemnitor bear the ultimate responsibility for the plaintiff's safety ... or when there is a generally recognized special relationship between the parties.

*Araujo,* 693 F.2d at 2–3; *See also, Rhode Island Depositors Economic Protection Corp. v. Hayes,* 64 F.3d 22, 26 (1 Cir., 1995). E.T. & L. has neither alleged any facts, nor offered any evidence, to even suggest that any "unique special factors" are extant or that any "special relationship" exists between the parties. In short, there is no basis upon which an implied contractual right to indemnification could be founded.

■ Finally, the tort-based theory of indemnification is

[d]esigned to shift the whole loss upon the more guilty of the two tortfeasors ... [and] has usually been available only when the party seeking it was merely passively

the customer", *Pac. Auto. Ins. Co. v. Commercial Casualty Ins. Co. of New York,* 108 Utah 500, 506, 161 P.2d 423, 425–6 (1945). Also, it could be defined "as 'embracing all the operations which are required in any specific situation to effect a completed delivery of the article.... ()

(T)he number of temporary or intermediate stops or resting places is immaterial.' " *Manhattan Fire & Marine Insurance Company v. Travelers Insurance Company,* 66 Cal.App.3d 794, 797, 136 Cal.Rptr. 400, 402 (1977) (citations omitted).

negligent while the would-be indemnitor was actively at fault. 'Passive negligence' has been limited to instances in which the indemnitee was vicariously or technically liable. Where the party seeking indemnification was itself guilty of acts or omissions proximately causing the plaintiff's injury, tort indemnification is inappropriate.

*Araujo,* 693 F.2d at 3.

In order to be held responsible for any damages in the instant case, the jury would of necessity have to find that E.T. & L. was itself negligent. Put another way, E.T. & L. could not be held vicariously liable for any acts or omissions of Fellows/Whitcraft, but rather only for its own independent negligence, if any. There quite simply is no relationship between the third-party plaintiffs and the third-party defendant, i.e., agent and principal, such as would give rise to any vicarious or derivative responsibility one for the other. Because E.T. & L. would have to be an active wrongdoer, independently negligent in order to be found liable, a tort-based claim for indemnification is precluded. *See, Economy Engineering Co. v. Commonwealth,* 413 Mass. 791, 793–4, 604 N.E.2d 694, 696 (1992). ("Common law indemnification has been available traditionally only to a defendant whose liability was vicarious or formal.")

To summarize, no theory of indemnification, contractual or tort-based, is viable based upon the record before the Court. In these circumstances, E.T. & L.'s motion for the entry of summary judgment in its favor on the indemnification claims shall be denied, and the third-party defendant's counterclaim for indemnification shall be dismissed.

### V. CONCLUSION AND ORDER

For all the reasons stated, it is ORDERED that the Motion for Summary Judgment of E.T. & L. Construction on Third–Party Claims and Motion For Entry of Separate and Final Judgment Under F.R.C.P. 54(b) (# 35) be, and the same hereby is, DENIED. E.T. & L.'s counterclaim for indemnification is DISMISSED.