WALTER & SHUFFAIN, P.C., et al., Plaintiffs,

v.

CPA MUTUAL INSURANCE COMPANY OF AMERICA RISK RETENTION GROUP, et al., Defendants and Third–Party Plaintiffs,

v.

Craighead Glick, LLP, Third–Party Defendant,

and

Rudolph Friedmann LLP, Third–Party Defendant and Fourth–Party Plaintiff,

v.

Gary H. Barnes, et al., Fourth–Party Defendants.

Civil Action No. 06–10163–NG.

United States District Court, D. Massachusetts.

Sept. 25, 2009.

118

---

Joseph S. Berman, Richard J. Grahn, Looney & Grossman, Boston, MA, for Plaintiffs.

William T. Bogaert, Michele Carlucci, Wilson, Elser, Moskowitz, Edelman & Dicker LLP, Boston, MA, for Third–Party Defendant.

Andrew F. Caplan, Burns & Levinson LLP, Boston, MA, for Third–Party Plaintiff/Defendant/Fourth Party Defendant.

John W. Chamberlain, Jr., Stephen J. Duggan, Lynch & Lynch, South Easton, MA, for Third–Party Defendant/Counter Claimant/Fourth Party Plaintiff.

Charles P. Kindregan, Looney & Grossman, Boston, MA, Counter Defendant/Plaintiff.

John J. McGivney, David B. Stanhill, Rubin & Rudman LLP, Boston, MA, for Fourth Party Defendant.

Michael G. Tracy, Rudolph Friedmann LLP, Boston, MA, for Plaintiff/Counter Defendant.

NANCY GERTNER, Judge.

The Court adopts the Magistrate Judge's conclusion that the facts as alleged in Fourth–Party Plaintiff Rudolph Friedmann LLP's complaint do not support any contractual or tort-based theory of indemnification, there being no objection. "Accordingly, the Fourth–Party Defendants'

Motion for Judgment on the Pleadings on Count II is allowed, and Rudolph Friedmann's claim for indemnification is dismissed."

### REPORT AND RECOMMENDATION ON FOURTH–PARTY DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

DEIN, United States Magistrate Judge.

## I. INTRODUCTION

This matter is before the court on the "Motion of Fourth–Party Defendants Gary H. Barnes, Primmer Piper Eggleston & Cramer, P.C. and Primmer & Piper, P.C. for Judgment on the Pleadings on Count II (Indemnification) of the Fourth–Party Complaint" (Docket No. 128) by which the fourth-party defendants are seeking dismissal of the claim for indemnification brought against them by Rudolph Friedmann LLP. As detailed herein, because the facts as alleged in the fourth-party complaint do not support any contractual or tort-based theory of indemnification, this court recommends to the District Judge to whom this case is assigned that the motion for judgment (Docket No. 128) be ALLOWED.

## II. OVERVIEW

This action arises out of two accountants professional liability insurance policies that CPA Mutual Insurance Company of America Risk Retention Group ("CPA Mutual") issued to the accounting firm of Walter & Shuffain, P.C. ("Walter & Shuffain"). After Walter & Shuffain and one of its shareholders, Burton R. Gesserman ("Gesserman"),[1] were sued in state court for accounting malpractice in December 2001

(the "Malpractice Action"), they initiated this insurance coverage litigation against CPA Mutual and its claims administrator, Claims Professionals Associated, Inc. ("Claims Professionals"). Subsequently, the plaintiffs also named as defendants Gary H. Barnes ("Barnes"), an attorney for the insurer, Barnes' former and current law firms, Primmer & Piper, P.C. and Primmer Piper Eggleston & Cramer PC (the "Law Firms"), and W. Kent Keeling ("Keeling"), a claims adjuster employed by Claims Professionals. As described in more detail below, the plaintiffs claim that CPA Mutual and Claims Professionals failed to comply with their obligations under the insurance policies and that each of the defendants failed to fulfill various duties and obligations that were intended to benefit the insureds. By their Second Amended Complaint, the plaintiffs are seeking a declaratory judgment regarding the scope of coverage available under the insurance policies, as well as damages for breach of the duty to defend, breach of contract, unfair and deceptive business and claim handling acts and practices, and intentional interference with contractual relations.

In October 2006, CPA Mutual and Claims Professionals filed third-party claims for indemnification and contribution against two law firms, Craighead Glick LLP ("Craighead Glick") and Rudolph Friedmann LLP ("Rudolph Friedmann"), which had been retained to defend the insureds in the underlying malpractice case. CPA Mutual and Claims Professionals claim that any liability they may have to the plaintiff-insureds was caused solely by the actions of the third-party defendants, and they are seeking to hold those firms liable for any damages that they may

---

1. Walter & Shuffain and Gesserman shall be referred to collectively as the "plaintiffs" or the "insureds."

become obligated to pay to the plaintiffs. However, in an Order on Motions to Dismiss Third–Party Complaint, 2008 WL 885994 (Docket No. 119) dated March 28, 2008 ("2008 Order"), the District Judge to whom this case is assigned dismissed the third-party plaintiffs' indemnification claims against Craighead Glick and Rudolph Friedmann, leaving only the contribution claims against those parties.

In March 2007, Rudolph Friedmann filed a Fourth–Party Complaint in which it asserts claims for contribution and indemnification against Barnes, the Law Firms and Keeling, *i.e.*, the attorneys and claims adjuster for the insurer. Therein, Rudolph Friedmann alleges that the fourth-party defendants were negligent in carrying out duties and obligations that they owed to CPA Mutual and Claims Professionals in connection with the underlying Malpractice Action, and that any damages sustained by CPA Mutual and Claims Professionals were caused by the conduct of Barnes, the Law Firms and Keeling. Accordingly, Rudolph Friedmann contends that to the extent it is found liable to CPA Mutual and Claims Professionals, it is entitled to contribution or indemnification from the fourth-party defendants.

Presently before the court is the "Motion of Fourth–Party Defendants Gary H. Barnes, Primmer Piper Eggleston & Cramer, P.C. and Primmer & Piper, P.C. for Judgment on the Pleadings on Count II (Indemnification) of the Fourth–Party Complaint" (Docket No. 128) by which Barnes and the Law Firms are seeking dismissal of Rudolph Friedmann's indemnification claim. In support of their motion, the fourth-party defendants contend that the indemnification claim should be dismissed under the law of the case doctrine because the District Court's 2008 Order dismissing the third-party plaintiffs' indemnification claim against Rudolph Fri-

edmann governs Rudolph Friedmann's claim against Barnes and the Law Firms. They further contend that the claim should be dismissed in any event because the factual circumstances alleged in the pleadings do not support any contractual or tort-based theory of indemnification.

As detailed below, this court finds that dismissal of Rudolph Friedmann's indemnification claim is not appropriate under the law of the case doctrine because the District Court's 2008 Order did not address the issues presented by the present motion. Nevertheless, this court finds that under the circumstances alleged in the pleadings, Rudolph Friedmann cannot maintain an indemnification claim against Barnes or the Law Firms. Therefore, and for all the reasons described herein, this court recommends to the District Judge to whom this case is assigned that the motion for judgment on the pleadings be ALLOWED.

### III. *STATEMENT OF FACTS*

When ruling on a motion for judgment on the pleadings, the court must "view the facts contained in the pleadings in the light most favorable to the party opposing the motion—here, [Rudolph Friedmann]—and draw all reasonable inferences in [that party's] favor." *Curran v. Cousins,* 509 F.3d 36, 43 (1st Cir.2007). In doing so, the court "may consider 'documents the authenticity of which are not disputed by the parties; ... documents central to plaintiffs' claim; [and] documents sufficiently referred to in the complaint.'" *Id.* at 44 (quoting *Watterson v. Page,* 987 F.2d 1, 3 (1st Cir.1993)) (punctuation and alteration in original). Applying this standard to the instant case, the relevant facts are as follows.

#### *The Underlying Malpractice Action*

CPA Mutual is an insurance company that is organized under the laws of the

State of Vermont. (3rd Party Compl. (Docket No. 46) ¶ 1). In or about August 1999, it issued an accountants professional liability insurance policy to the accounting firm of Walter & Shuffain. (*Id.* ¶ 7). The policy ran from August 1, 1999 to August 1, 2000. (*Id.*). CPA Mutual later issued a second professional liability insurance policy to Walter & Shuffain that ran from August 1, 2001 to August 1, 2002. (*Id.*). Each of the policies had limits of liability of $2 million per claim and $4 million in the aggregate. (2nd Am. Compl. (Docket No. 55) at p. 2).

In July 2000, Walter & Shuffain allegedly notified CPA Mutual of potential claims against it by two former clients. (*Id.*). Subsequently, in December 2001, those clients, along with two additional entities, filed the Malpractice Action against Walter & Shuffain and Gesserman in which they alleged claims against the insureds for professional negligence. (*Id.*). The insureds notified CPA Mutual of this development. (*Id.*). In the instant case, the insureds allege that the claims made against them in the Malpractice Action presented exposure to liability in excess of the combined aggregate limits of the CPA Mutual policies, but that CPA Mutual wrongfully took the position that only a single policy covered those claims and that only a single $2 million per claim limit applied. (*Id.*).

At all relevant times, Claims Professionals, a wholly-owned subsidiary of CPA Mutual, served as the claims administrator for CPA Mutual. (4th Party Compl. (Docket No. 89) ¶ 4). Pursuant to its contract with CPA Mutual, Claims Professionals allegedly had an obligation to investigate claims, hire defense counsel, consult experts and negotiate settlement of claims against CPA Mutual's insureds. (2nd Am. Compl. ¶ 73). Keeling, a claims adjuster for Claims Professionals, was responsible for adjusting the claims made against the insureds in the Malpractice Action. (4th Party Compl. ¶ 11).

CPA Mutual and Claims Professionals hired Barnes and the Law Firms to represent them in connection with the Malpractice Action. (*See* 4th Party Compl. ¶ 12). In his capacity as legal counsel, Barnes was responsible for analyzing and evaluating the claims made against the insureds. (*Id.*). Allegedly, Barnes was also responsible for adjusting and negotiating the settlement of those claims. (*Id.*).

While Barnes was retained to represent the insurer, counsel was also needed to represent the insureds. Thus, in 2001, Keeling, at the request of Walter & Shuffain and Gesserman, contacted the law firm Craighead Glick. (Answer of Rudolph Friedmann to 3rd Party Compl. (Docket No. 86) ¶ 10). Thereafter, Craighead Glick was retained, with CPA Mutual's consent, as defense counsel to the insureds in the Malpractice Action. (*Id.*). Craighead Glick designated Michael Tracy, Esq. ("Tracy") as the lead attorney on the matter. (3rd Party Compl. ¶ 10). When Tracy later left Craighead Glick to join Rudolph Friedmann, Rudolph Friedmann became defense counsel to Walter & Shuffain and Gesserman in the Malpractice Action. (Answer of Rudolph Friedmann to 3rd Party Compl. ¶¶ 12–13).

CPA Mutual and Claims Professionals claim that Attorney Tracy and his law firms also agreed to perform certain work on behalf of CPA Mutual in connection with the Malpractice Action. (*See* 3rd Party Compl. ¶ 11). Specifically, they contend that Attorney Tracy agreed to investigate and report to CPA Mutual on the factual background giving rise to the claims against the insureds, provide CPA Mutual with a legal and factual analysis of the asserted claims and alleged damages, consult with CPA Mutual with respect to a defense strategy, timely notify CPA Mutu-

al of developments in the Malpractice Action, and provide CPA Mutual with any documentation and information that might be necessary for CPA Mutual to fulfill its defense obligations to the insureds. (*Id.*). However, Rudolph Friedmann disputes that it or Craighead Glick ever owed any duty to or represented the interests of CPA Mutual or Claims Professionals, and contends that its only attorney-client relationship was with the insureds. (Answer of Rudolph Friedmann to 3rd Party Compl. ¶ 11).

### The Instant Litigation

On January 25, 2006, while the Malpractice Action was still pending,[2] the insureds filed this action against CPA Mutual and Claims Professionals seeking a declaratory judgment with respect to the amount of coverage afforded under the two insurance policies. (3rd Party Compl. ¶ 23). The plaintiffs also sought damages for breach of contract, breach of the duty to defend and violations of Mass. Gen. Laws c. 93A and Mass. Gen. Laws c. 176D. (*Id.*). In particular, the plaintiffs claimed that CPA Mutual and Claims Professionals (1) failed to investigate, evaluate and settle the Malpractice Action in a timely manner; (2) failed to provide a defense in good faith and without negligence; (3) improperly changed defense counsel;[3] (4) refused to pay claims after completing a reasonable investigation; and (5) failed to provide a reasonable explanation for failing to settle the Malpractice Action. (*Id.* (citing Am. Compl. (Docket No. 12) ¶¶ 55, 59, 65–69, 98–99, 101)).

The plaintiffs subsequently amended their complaint in order to add a claim against Claims Professionals for intentional interference with contractual relations between the CPA Mutual and the insureds and to name Keeling, Barnes and the Law Firms as additional defendants to the litigation. (*See* 2nd Am. Compl.). As alleged in the Second Amended Complaint, the plaintiffs claim that Keeling, Barnes and the Law Firms improperly advised CPA Mutual in connection with the Malpractice Action and failed to negotiate settlement of those claims in good faith, thereby breaching their contractual obligations to provide CPA Mutual with services for the benefit of the insureds. (2nd Am. Compl. at p. 3). Thus, the plaintiffs are seeking to hold those parties liable for breach of contract, unfair and deceptive business and claim handling practices in violation of Mass. Gen. Laws c. 93A and 176D, and intentional interference with contractual relations between CPA Mutual and its insureds. (*Id.* at Counts V–VIII).

On October 30, 2006, CPA Mutual and Claims Professionals filed their Third–Party Complaint asserting claims for contribution and indemnification against Craighead Glick and Rudolph Friedmann. Therein, the third-party plaintiffs allege that between March 2002 and July 2004, Tracy and his law firms failed to timely investigate and report to CPA Mutual regarding the facts giving rise to the claims in the Malpractice Action, failed to furnish any case reports or evaluations of those claims, failed to timely notify CPA Mutual of significant developments in the Malpractice Action and repeatedly failed to

---

2. In October 2006, the parties to the Malpractice Action agreed to a settlement in the amount of $2.7 million. (2nd Am. Compl. ¶ 54).

3. It is undisputed that in November 2004, CPA Mutual appointed a new law firm to replace Rudolph Friedmann as defense coun-

sel to Walter & Shuffain and Gesserman, and that in July 2005, the insureds retained Tracy to serve as their independent counsel in the Malpractice Action. (3rd Party Compl. ¶¶ 19–20, 22; Answer of Rudolph Friedmann to 3rd Party Compl. ¶¶ 19–20, 22).

respond to CPA Mutual's inquiries about the claims asserted and defenses available in that Action. (3rd Party Compl. ¶ 14). They further allege that Rudolph Friedmann ignored its repeated request for a comprehensive case report and assessment of the underlying litigation, and that Tracy incorrectly advised them regarding the availability of a critical legal defense under Massachusetts law. (*Id.* ¶¶ 14–18). Accordingly, CPA Mutual and Claims Professionals contend that any liability they may have to the plaintiffs for failure to properly provide an appropriate defense and insurance coverage was caused solely by Craighead Glick's and Rudolph Friedmann's negligence, failure to comply with contractual obligations, and failure to fulfill their duty to act in good faith in connection with the Malpractice Action. (*Id.* ¶¶ 28, 33).

Rudolph Friedmann filed its Fourth–Party Complaint against Keeling, Barnes and the Law Firms in March 2007. By its Complaint, Rudolph Friedmann alleges that it was Barnes and the Law Firms, not Rudolph Friedmann, who failed to properly advise CPA Mutual and Claims Professionals in connection with the Malpractice Action, that Barnes and the Law Firms were negligent in their provision of legal services to CPA Mutual and Claims Professionals, and that each of the fourth-party defendants was negligent with regard to investigating, analyzing, evaluating, adjusting and negotiating settlement of the claims asserted in the Malpractice Action. (*Id.* ¶¶ 15–17). Rudolph Friedmann has asserted two causes of action against the fourth-party defendants. In Count I, Rudolph Friedmann claims that in the event it is found liable to CPA Mutual and Claims Professionals, it is entitled to contribution from the fourth-party defendants. (*Id.* ¶¶ 22–26). In Count II, Rudolph Friedmann claims that any liability it may face as a result of the third-party

claims was a result of the improper conduct of Keeling, Barnes and the Law Firms, and that it is entitled to complete indemnification from the fourth-party defendants. (*Id.* ¶¶ 27–31). Only Count II is the subject of the present motion for judgment on the pleadings.

On March 28, 2008, the District Court granted in part and denied in part Craighead Glick's and Rudolph Friedmann's motions to dismiss the Third–Party Complaint. (2008 Order at 2). As described in further detail below, the District Court determined that CPA Mutual and Claims Professionals had stated claims for contribution against the third-party defendants for any liability they may have to the insureds, but that they had failed to state claims for indemnification. (*See Id.*). Therefore, the District Court dismissed Count I of the Third–Party Complaint, leaving only the claim for contribution. (*Id.*). In doing so, the District Court did not consider whether Rudolph Friedmann had stated an indemnification claim against the fourth-party defendants or whether its ruling on the motions would have any impact on Rudolph Friedmann's fourth-party claims.

Additional factual details relevant to this court's analysis are described below.

## IV. *ANALYSIS*

### A. *Standard of Review*

■ Barnes and the Law Firms have moved, pursuant to Fed.R.Civ.P. 12(c), for a judgment on the pleadings with respect to Count II of the Fourth–Party Complaint. The legal standard for evaluating a motion for judgment on the pleadings is essentially the same as the standard for evaluating a motion to dismiss under Fed.R.Civ.P. 12(b)(6), except that "[a] Rule 12(c) motion, unlike a Rule 12(b)(6) motion, implicates the pleadings as a whole."

*Aponte–Torres v. Univ. of P.R.,* 445 F.3d 50, 54–55 (1st Cir.2006). Thus, when confronted with a motion for judgment on the pleadings, the court must "view the facts contained in the pleadings in the light most favorable to the party opposing the motion ... and draw all reasonable inferences in [that party's] favor." *Curran,* 509 F.3d at 43. Dismissal is only appropriate if the pleadings, so viewed, fail to support a "plausible entitlement to relief." *Rodriguez–Ortiz v. Margo Caribe, Inc.,* 490 F.3d 92, 95 (1st Cir.2007) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 559, 127 S.Ct. 1955, 1967, 167 L.Ed.2d 929 (2007)).

█ Two underlying principles must guide the court's assessment as to the adequacy of the pleadings to support a claim for relief. *Maldonado v. Fontanes,* 568 F.3d 263, 268 (1st Cir.2009). "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Such conclusory statements are "not entitled to the assumption of truth." *Id.* (quoting *Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (additional citations omitted)). "Second, only a complaint that states a plausible claim for relief" will survive a motion for judgment on the pleadings. *Id.* (citations omitted). "This second principle recognizes that the court's assessment of the pleadings is 'context specific,' requiring 'the reviewing court to draw on its judicial experience and common sense.'" "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (quoting *Ashcroft,* 129 S.Ct. at 1950) (additional citations omitted; alterations in original). As detailed below, this court finds that when the applicable standard is applied to the pleadings in this case, Barnes' and the Law Firms' motion for judgment on the pleadings should be allowed.

## B. *The Law of the Case Doctrine*

█ Barnes and the Law Firms contend that dismissal of the indemnification claim against them is warranted pursuant to the law of the case doctrine. In particular, they argue that because the District Court has ruled that the third-party plaintiffs cannot maintain an indemnification claim against Rudolph Friedmann, Rudolph Friedmann's "own indemnification count against Gary Barnes and his law firms (Count II of the fourth-party complaint), which is predicated upon Rudolph Friedmann being found liable for damages to the Third Party Plaintiffs ... must fail." (4th Party Def. Mem. (Docket No. 129) at 8). As an initial matter, the dismissal of the third-party plaintiffs' indemnification claim does not foreclose the possibility that Rudolph Friedmann will be found liable for damages pursuant to the third-party plaintiffs' surviving claim for contribution. Moreover, this court finds that the law of the case doctrine is inapplicable to the issues raised by the present motion.

█ "Under the law of the case doctrine, 'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" *Negron–Almeda v. Santiago,* 579 F.3d 45, 50 (1st Cir.2009) (quoting *United States v. Wallace,* 573 F.3d 82, 87–88 (1st Cir.2009)). The doctrine has two branches. *Id.* "The first branch, called the 'mandate rule,' 'prevents relitigation in the trial court of matters that were explicitly or implicitly decided by an earlier appellate decision in the same case.'" *Id.* (quoting *United States v. Moran,* 393 F.3d 1, 7 (1st Cir.2004)). The

second branch, which is relevant here, "provides that unless corrected by an appellate tribunal, a legal decision made at one stage of a civil or criminal case constitutes the law of the case throughout the pendency of the litigation. This means that a court ordinarily ought to respect and follow its own rulings, made earlier in the same case." *Ellis v. United States,* 313 F.3d 636, 646 (1st Cir.2002) (internal quotations and citation omitted).

Nothing in the District Court's 2008 Order addresses the issue presented here—that is, whether Rudolph Friedmann is entitled to maintain a claim for indemnification against Barnes and the Law Firms. The question considered by the District Court was whether the third-party plaintiffs, CPA Mutual and Claims Professionals, had alleged a claim for tort-based indemnity against Craighead Glick and Rudolph Friedmann. (*See* 2008 Order at 19). Specifically, in its Order, the District Court considered two questions: "[f]irst, whether CPA Mutual's liability in tort to Walter & Shuffain is derivative or vicarious by reason of the third-party defendants' acts or omissions [and][s]econd, if so, whether CPA Mutual could prove at trial that it was without fault for the torts." (*Id.* at 19–20). The Court determined that under Massachusetts law, an insurer cannot be held liable for the negligence of an attorney hired to represent an insured, and that therefore, any liability in tort that CPA Mutual might face must arise from its own actions and not those of the third-party defendants. (*Id.* at 20). Consequently, the District Court concluded that indemnity was not appropriate. (*Id.*).

Significantly, nothing in the 2008 Order addressed whether, in its Fourth–Party Complaint, Rudolph Friedmann has stated a claim against Barnes or the Law Firms. In particular, the District Court did not

consider whether Rudolph Friedmann can maintain a claim for indemnification against those defendants.

The law of the case doctrine is not applicable where the court has not previously ruled on an issue. *See City of Bangor v. Citizens Communications Co.,* 532 F.3d 70, 100 (1st Cir.2008) (where court district court had not ruled on appellants' motions for entry of judgment or on effect that prior findings had on their potential liability, "the law of the case doctrine plays no role" and appellants were free to reassert their arguments and motions in subsequent litigation). That is the situation here. Therefore, the law of the case does not support the dismissal of Rudolph Friedmann's claim for indemnification.

### C. *Failure to State an Indemnification Claim*

 Barnes and the Law Firms also contend that Rudolph Friedmann's indemnification claim must be dismissed because the fourth-party plaintiff has failed to state a claim based on either a contractual or a tort-based theory of indemnification. A right of indemnification may arise from three sets of circumstances: "First, an express agreement may create a right to indemnification. Second, a contractual right to indemnification may be implied from the nature of the relationship between the parties. Third, a tort-based right to indemnification may be found where there is a great disparity in the fault of the parties." *Araujo v. Woods Hole, Martha's Vineyard, Nantucket Steamship Auth.,* 693 F.2d 1, 2 (1st Cir. 1982) (internal citations omitted). Rudolph Friedmann's claim is based solely on a tort-based theory of indemnification. (*See* 4th Party Pl. Opp. Mem. (Docket No. 130) at 9 ("any negligence on the part of Rudolph Friedmann is insignificant when compared to that of Barnes and his law

firms . . . .")).[4] For the reasons detailed below, the alleged facts do not support such a claim.

"The general rule is that a person who negligently causes injury to a third person is not entitled to indemnification from another person who also negligently caused that injury. Indemnification has been permitted, however, where the person seeking indemnification did not join in the negligent act of another but was exposed to liability because of that negligent act." *Rathbun v. Western Mass. Elec. Co.*, 395 Mass. 361, 364, 479 N.E.2d 1383, 1385 (1985). "Designed to shift the whole loss upon the more guilty of the two tortfeasors, [this tort-based theory of indemnification] has usually been available only when the party seeking it was merely passively negligent while the would-be indemnitor was actively at fault. 'Passive negligence' has been limited to instances in which the indemnitee was vicariously or technically liable." *Araujo*, 693 F.2d at 3 (internal citations omitted). *See also Slocum v. Donahue*, 44 Mass.App.Ct. 937, 939, 693 N.E.2d 179, 182 (1998) ("This right to indemnity is limited to those cases in which the would-be indemnitee is held derivatively or vicariously liable for the wrongful act of another") (quoting *Decker v. Black & Decker Mfg. Co.*, 389 Mass. 35, 40, 449 N.E.2d 641, 645 (1983)). "Where the party seeking indemnification was itself guilty of acts or omissions proximately causing the plaintiff's injury, tort indemnification is inappropriate." *Araujo*, 693 F.2d at 3.

Rudolph Friedmann has not alleged any facts establishing a relationship between the parties that would give rise to vicarious or derivative liability. For instance, but without limitation, Rudolph Friedmann has not alleged facts indicating that Barnes or the Law Firms were acting as its agent at any relevant time. *See Medeiros v. Whitcraft*, 931 F.Supp. 68, 76 (D.Mass.1996) (no indemnification available where there was "no relationship between the third-party plaintiffs and the third-party defendant, i.e., agent and principal, such as would give rise to any vicarious or derivative responsibility one for the other"). Nor has it alleged facts suggesting that there was another type of relationship that could expose Rudolph Friedmann to liability, by operation of law, for the actions of the fourth-party defendants. *See, e.g., Fireside Motors, Inc. v. Nissan Motor Corp. USA*, 395 Mass. 366, 370, 479 N.E.2d 1386, 1389 (1985) (claim for indemnification against manufacturer of defective product available to retailer who becomes liable to a customer for the sale of that product). Instead, the facts alleged in the instant case demonstrate that any finding of liability against Rudolph Friedmann must be based on Rudolph Friedmann's own conduct.

---

4. At oral argument, counsel for Rudolph Friedmann confirmed that the "slight fault" theory of indemnification is the only basis upon which it is asserting its indemnification claim. Indeed, none of the allegations of the Fourth–Party Complaint would support a contract-based claim. In particular, Rudolph Friedmann has not alleged that Barnes or the Law Firms ever entered into an express agreement to indemnify Rudolph Friedmann for any work performed on behalf of CPA Mutual or Claims Professionals, or in connection with the Malpractice Action. *See Araujo*, 693 F.2d at 2 (first theory of indemnification cannot apply where there is no express agreement between the parties). Nor has it alleged that there were any "special factors" surrounding the parties' relationship that would give rise to an implied right of contractual indemnity. *See Id.* at 2–3 (contractual right to indemnification will not be implied without evidence establishing a special relationship between the parties or special factors demonstrating that the parties intended that the would-be indemnitor bear the ultimate responsibility for any liability to a third party).

When viewed most favorably to Rudolph Friedmann, the facts establish that the parties were retained to represent different clients, and that their obligations to those clients were distinct. Specifically, the facts demonstrate that Barnes and the Law Firms were hired to represent CPA Mutual and Claims Professionals, while Rudolph Friedmann was hired to represent the insureds. (*See* 4th Party Compl. ¶ 12; Answer of Rudolph Friedman to 3rd Party Compl. ¶¶ 11–13). Rudolph Friedmann cannot be held liable for the fourth-party defendants' failure to provide adequate legal services to their own clients.

Even if both Rudolph Friedmann and the fourth-party defendants are found to have had obligations to CPA Mutual and Claims Professionals, Rudolph Friedmann's liability, if any, must arise from its own acts or omissions and not those of Barnes or the Law Firms. The third-party plaintiffs claim, among other things, that Rudolph Friedmann failed to provide case reports and evaluations to CPA Mutual, failed to timely notify CPA Mutual of significant developments in the Malpractice Action, ignored repeated requests for a comprehensive case report and assessment of the underlying litigation, and improperly advised CPA Mutual regarding available defenses in the Malpractice Action. (*See* 3rd Party Compl. ¶¶ 14–18). These obligations were independent of any duties owed CPA Mutual by Barnes and the Law Firms. Consequently, even if Barnes and the Law Firms were negligent in their provision of legal services to CPA Mutual, and with regard to analyzing, evaluating, adjusting and negotiating settlement of the Malpractice Action, that would not be sufficient to establish liability against Rudolph Friedmann. "Because [Rudolph Friedmann] would have to be an active wrongdoer, independently negligent in order to be found liable, a tort-based claim for indemnification is precluded."[5] *Medeiros*, 931 F.Supp. at 76 (third-party defendant not entitled to summary judgment on its indemnification claim where the jury would have to find third-party defendant liable, if at all, due to its own acts or omissions and not those of the indemnitor). *See also Slocum*, 44 Mass. App.Ct. at 939, 693 N.E.2d at 182–83 (no indemnification where jury could not have found that third-party plaintiffs were liable for the conduct of the third-party defendant).

The cases on which Rudolph Friedmann relies do not compel a different conclusion. *See Hollywood Barbecue Co. v. Morse*, 314 Mass. 368, 370, 50 N.E.2d 55, 56 (1943) (allowing restaurant owner to seek indemnification from its supplier for damages resulting from injuries sustained when the supplier's employee struck a pedestrian with a bulkhead door, where restaurant owner "did not join in [the wrongful] act, although the plaintiff became liable in consequence of it"); *Boston Woven–Hose & Rubber Co. v. Kendall*, 178 Mass. 232, 237, 59 N.E. 657, 658 (1901) (upholding judgment for plaintiff on indemnification claim against manufacturer of a boiler where plaintiff's liability was based solely on its failure to discover a defect in the boiler and the plaintiff had justifiably relied on representations and warranties provided by the manufacturer); *Gray v. Boston Gas Light Co.*, 114 Mass. 149, 154–55 (1873) (upholding verdict for plaintiff on its indemnification claim where the defendant's

---

**5.** Rudolph Friedmann's allegation that it "has been exposed to the third-party claims, and been made to answer same, as a result of the negligent, improper and tortious conduct of Barnes, [the Law Firms] and Keeling[,]" (4th Party Compl. ¶ 29), is conclusory and is therefore "not entitled to the assumption of truth." *Maldonado*, 568 F.3d at 268 (quoting *Ashcroft*, 129 S.Ct. at 1949) (additional citations omitted).

wrongful act had exposed the plaintiff to liability, and the plaintiff had been "held liable by inference of law, and not by reason of his active participation in the act which was the occasion of the injury"). In each of these cases, the indemnitee's liability arose as a result of the defendant's acts or omissions and not as a result of the indemnitee's own conduct. Therefore, they are not analogous to the facts alleged in the instant case. Accordingly, this court recommends that Rudolph Friedmann's claim for indemnification be dismissed.

### V. *CONCLUSION*

For all the reasons detailed herein, this court recommends to the District Judge to whom this case is assigned that the "Motion of Fourth–Party Defendants Gary H. Barnes, Primmer Piper Eggleston & Cramer, P.C. and Primmer & Piper, P.C. for Judgment on the Pleadings on Count II (Indemnification) of the Fourth–Party Complaint" (Docket No. 128) be ALLOWED and that Rudolph Friedmann's claim for indemnification be dismissed.[6]

September 10, 2009

---

6. The parties are hereby advised that under the provisions of Fed.R.Civ.P. 72 any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court within 10 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with this Rule shall preclude further appellate review. *See* *Keating v. Sec'y of Health & Human Servs.,* 848 F.2d 271, 275 (1st Cir.1988); *United States v. Valencia–Copete,* 792 F.2d 4, 6 (1st Cir.1986); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603, 604–605 (1st Cir.1980); *United States v. Vega,* 678 F.2d 376, 378–79 (1st Cir.1982); *Scott v. Schweiker,* 702 F.2d 13, 14 (1st Cir.1983); *see also Thomas v. Arn,* 474 U.S. 140, 153–54, 106 S.Ct. 466, 474, 88 L.Ed.2d 435 (1985). *Accord Phinney v. Wentworth Douglas Hosp.,* 199 F.3d 1, 3–4 (1st Cir.1999); *Henley Drilling Co. v. McGee,* 36 F.3d 143, 150–51 (1st Cir.1994); *Santiago v. Canon U.S.A., Inc.,* 138 F.3d 1, 4 (1st Cir. 1998).